[No. G033119. Fourth Dist., Div. Three. June 2, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
LENARD LAFFAYETTE RHODES, Defendant and Appellant.

1340

COUNSEL

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

O'LEARY, Acting P. J.—Lenard Laffayette Rhodes appeals from a judgment after a jury convicted him of two counts of attempted voluntary manslaughter, shooting at an occupied motor vehicle, and shooting from a motor vehicle at a person other than the occupant of a motor vehicle, and found true several firearm related enhancements. Rhodes argues the trial court erred in refusing to instruct the jury with CALJIC No. 5.50 and in instructing the jury with CALJIC No. 12.50. Rhodes also contends the abstract of judgment should be amended to show he was convicted of shooting at an occupied motor vehicle and not at an inhabited dwelling house. Because we conclude the instructional error was prejudicial and reverse his convictions, we need not address his other argument.

## FACTS

Rhodes was at Brandell Overstreet's residence, at the Motel 6 in the City of Stanton, helping him move when Demetrius Factory arrived. Rhodes and Factory, who had known each other for about 10 years, got into an argument and then a fight over a rental car. Overstreet stopped the fight.

Three days later, Rhodes and Overstreet were standing in front of Overstreet's parents' house when Factory and his cousin, Damion Wright, drove up. Wright got out of the car, walked towards Rhodes, and asked him who had hit his cousin, Factory. Wright and Factory argued with Rhodes and Overstreet because Factory believed Rhodes had used his name when Rhodes received a traffic citation. Overstreet's parents came outside and told everyone to leave. Wright and Factory left.

As Rhodes was driving home, he saw Wright and Factory driving in the opposite direction. Wright turned around and stopped at a stop sign next to Rhodes.[1] The men argued. Wright got out of the car and "walked around the back of the car" he was driving and between the two cars. Rhodes picked up his gun and fired it out the window hitting Wright in the torso. As Rhodes's car was moving forward, he fired the gun at Factory, who was still seated in the car. The windshield shattered, but Factory ducked and was not hit. Rhodes drove away.

Factory drove Wright to his parents' house, and Factory's mother called the paramedics and the Orange County Sheriff's Department. At the hospital, both Wright and Factory told Prinzing what had happened and that they did not have any weapons. Rhodes was arrested about a year later.

An information charged Rhodes with attempted murder of Wright (Pen. Code, §§ 664, 187, subd. (a))[2] (count 1), attempted murder of Factory (§§ 664, 187, subd. (a)) (count 2), shooting at an occupied motor vehicle (§ 246) (count 3), and shooting from a motor vehicle at a person other than the occupant of a motor vehicle (§ 12034, subd. (c)) (count 4). The information alleged Rhodes discharged a firearm as to counts 1 and 2 (§ 12022.53, subd. (c)), and Rhodes discharged a firearm causing great bodily injury as to all of the counts (§ 12022.53, subd. (d)).

At trial, Rhodes admitted he was previously "convicted of selling cocaine[.]" He testified that at the April 23, 2001, incident, Factory said he was going to get his cousin who had a gun. Rhodes stated he bought a .38 handgun through a friend because Factory had threatened him. Rhodes said that when Factory and Wright drove up to Overstreet's parents' home on August 26, 2001, he was "scared to death."

Rhodes testified that when Wright stopped at the stop sign, got out of the car, and walked towards him, Wright "had a gun in his right hand[.]" Rhodes stated, "[he] pulled [his] car out of park to" drive away, but he did not drive away because "[he] was so scared that [he] didn't really think to just—you know, [he] didn't want him to start shooting at [him]." Rhodes added, "[he] started to [leave], but at that point [Wright] had got close from around the car so that he had aimed at [Rhodes]." Rhodes said he "frantic[ally]" put his hand out of the window and fired the gun. Rhodes stated he got "scared" and "panicked," and fired a second time, but he was not aiming at Factory. Rhodes said he left because he did not "know if he was going to start back

---

[1] Orange County Sheriff's Investigator Keith Prinzing interviewed Wright after the shooting and Wright said he turned around because Rhodes "made a gesture to him[.]" Rhodes denied this.

[2] All further statutory references are to the Penal Code.

shooting or not." Wright and Factory both testified they did not have any weapons that day. The Orange County Sheriffs impounded the car Wright and Factory were driving on the evening of the incident and did not find any weapons.

The jury found Rhodes guilty of the lesser included offense of attempted voluntary manslaughter on counts 1 and 2 (§§ 664, 192, subd. (a)), and guilty of counts 3 and 4. The jury found it true Rhodes discharged a firearm as to counts 1 and 2 (§ 12022.5, subd. (a)), he discharged a firearm causing great bodily injury on Wright as to count 1 (§ 12022.7, subd. (a)), and he discharged a firearm causing great bodily injury as to count 4. The jury found it was not true Rhodes discharged a firearm causing great bodily injury as to count 3.

The trial court sentenced Rhodes to the low term of three years on count 4 and 25 years to life on the enhancement for discharging a firearm and causing great bodily injury as to count 4. The court also sentenced him to the low term of three years on count 3 to run concurrently with the 28-years-to-life sentence on count 4. The court stayed sentencing on counts 1 and 2 and their enhancements pursuant to section 654.

## DISCUSSION

*Jury Instructions*

Rhodes argues the trial court erred by instructing the jury with CALJIC No. 12.50, "Use of a Firearm by Convicted Felon-Self-Defense," and further erred by refusing to instruct the jury with CALJIC No. 5.50, "Self-Defense-Assailed Person Need Not Retreat." After an initial discussion of the jury instructions, the court stated it was inclined to give CALJIC No. 12.50 as modified, deleting the reference to section 12021,[3] and it would not instruct the jury with CALJIC No. 5.50. The court then gave Rhodes's defense counsel the weekend to research the issue.

The following Monday, the trial court resumed discussion of the jury instructions. Rhodes argued it would be improper to instruct the jury with CALJIC No. 12.50 because he was not charged with violating section 12021. In strongly objecting to CALJIC No. 12.50, Rhodes indicated, "I think this is a devastating instruction for the defendant." As to the Use Note in CALJIC No. 12.50 stating CALJIC No. 5.50 should not be given if the defendant is a

---

[3] Section 12021, subdivision (a)(1), states, "Any person who has been convicted of a felony under the laws . . . of the State of California, . . . who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."

convicted felon, Rhodes maintained because CALJIC No. 12.50 was improper, the Use Note was inapt. (Use Note to CALJIC No. 12.50 (7th ed. 2003) p. 94.) Rhodes also contended there was no authority stating CALJIC No. 5.50 could be refused solely because the defendant was previously convicted of a felony. The district attorney urged the court to instruct the jury with CALJIC No. 12.50 and not with CALJIC No. 5.50.

In ruling CALJIC No. 12.50 was a proper instruction, the trial court noted Rhodes had testified he was a convicted felon and had possessed a firearm. The court explained, in light of this testimony, it was concerned the jury might speculate as to what the law is relating to a felon in possession of a gun and could improperly use Rhodes's felon status. The court opined the jurors would rely on their common knowledge regarding felons possessing firearms and wrongly refuse to consider Rhodes's claim of self-defense regardless of the law and the facts. The court was concerned the jury needed to know "there is this limited situation in which [Rhodes] is allowed to possess a firearm and it doesn't violate the law[.]"

The trial court agreed with the district attorney's position Rhodes, a convicted felon, should not have had a gun and did not have the right to stand his ground and shoot the gun. The court denied Rhodes's request to instruct the jury with CALJIC No. 5.50.

a. *CALJIC No. 12.50*

■ Rhodes argues the trial court erred in instructing the jury with CALJIC No. 12.50 because it "undermined [Rhodes's] defense of . . . self-defense because it erroneously permitted the jury to find that the shooting was unlawful (and thus unreasonable) merely because of [Rhodes's] status as a felon." Specifically, Rhodes claims: (1) CALJIC No. 12.50 was not relevant to the issues raised by the evidence because he was not charged with violating section 12021; and (2) CALJIC No. 12.50 misstates the law and is misleading as it relates to a felon's right of self-defense. We agree.

■ In *People v. King* (1978) 22 Cal.3d 12, 15 [148 Cal.Rptr. 409, 582 P.2d 1000] (*King*), the California Supreme Court addressed the issue of whether self-defense was a defense to a charge of violating section 12021, which at the time made it a crime for a felon to carry a concealable firearm. In holding section 12021 does not affect a felon's right to use a concealable firearm in self-defense, the *King* court stated: "Thus, when a member of one of the affected classes is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in

which the necessity or apparent necessity to use it in self-defense continues, does not violate section 12021. As in all cases in which deadly force is used or threatened in self-defense, however, the use of the firearm must be reasonable under the circumstances and may be resorted to only if no other alternative means of avoiding the danger are available. In the case of a felon defending himself alone, such alternatives may include retreat where other persons would not be required to do so." (22 Cal.3d at p. 24.)

CALJIC No. 12.50, "Use of a Firearm by Convicted Felon-Self-Defense," is based on *King* and provides: "A person previously convicted of a felony does not violate [section] 12021 . . . by being in possession of a firearm if: [¶] 1. [He] . . . as a reasonable person had grounds for believing and did believe that [he] . . . was . . . in imminent peril of great bodily harm; and [¶] 2. Without preconceived design on [his] . . . part, a firearm was made available to [him] . . . ; [¶] 3. [His] . . . possession of such firearm was temporary and for a period of time no longer than that in which the necessity or apparent necessity to use it in self-defense continued; and [¶] 4. The use of the firearm was reasonable under the circumstances and was resorted to only if no alternative means of avoiding the danger were available." CALJIC No. 12.50's Use Note states, "Do not give CALJIC [No.] 5.50 (Assailed Person Need Not Retreat) if defendant was previously convicted of a felony." (Use Note to CALJIC No. 12.50 (7th ed. 2003) p. 94.)

The trial court instructed the jury with CALJIC No. 12.50, modified as follows: "You are instructed that a person previously convicted of a felony does not violate *the law* by being in possession of a firearm if . . . ." (Italics added.)

Although the trial court deleted the reference to section 12021, the court erred in instructing the jury with CALJIC No. 12.50. CALJIC No. 12.50 is not a general instruction, but rather a specific instruction to be used when a defendant is charged with violating section 12021. Rhodes was not charged with violating section 12021, and therefore, the court should not have instructed the jury there was a limited circumstance under which Rhodes could lawfully possess a gun. We recognize the trial court was attempting to protect Rhodes. However, the court had already instructed the jury with CALJIC No. 2.23 as to the limited purpose for which evidence of Rhodes's prior felony conviction could be used.[4] As we explain below, CALJIC

---

[4] CALJIC No. 2.23 provides: "The fact that a witness has been convicted of a felony, if this is a fact, may be considered by you only for the purpose of determining the believability of that witness. The fact of a conviction does not necessarily destroy or impair a witness's believability. It is one of the circumstances that you may consider in weighing the testimony of that witness."

No. 12.50 had the practical effect of placing an added burden of retreat on Rhodes, thereby depriving him of a potentially meritorious defense.

b. *CALJIC No. 5.50*

Rhodes argues the trial court erred in refusing to instruct the jury with CALJIC No. 5.50 because "whether [Rhodes] was required to retreat was squarely [at] issue" and without it "the jury may have incorrectly concluded [Rhodes] had a duty to run from Factory and Wright by driving away from the intersection when Wright stopped next to him at the intersection." Again, we agree.

CALJIC No. 5.50, "Self-Defense-Assailed Person Need Not Retreat," states, "A person threatened with an attack that justifies the exercise of the right of self-defense need not retreat. In the exercise of [his] . . . right of self-defense a person may stand [his] . . . ground and defend [himself] . . . by the use of all force and means which would appear to be necessary to a reasonable person in a similar situation and with similar knowledge; and a person may pursue [his] . . . assailant until [he] . . . has secured [himself] . . . from danger if that course likewise appears reasonably necessary. This law applies even though the assailed person might more easily have gained safety by flight or by withdrawing from the scene."

 Jury instructions must (1) deal with the law and not the facts; (2) deal with the points of law relevant to the issues in the case; and (3) state the law correctly. (§ 1127.) "A defendant is entitled to instruction on request on any defense for which substantial evidence exists. [Citations.] However, the trial court need give a requested instruction concerning a defense only if there is substantial evidence to support the defense. [Citation.]" (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267 [127 Cal.Rptr.2d 888].)

As explained above, Rhodes was not charged with violating section 12021, and the court should not have instructed the jury with CALJIC No. 12.50. Therefore, CALJIC No. 12.50's Use Note was inapplicable, and although Rhodes was a convicted felon, he had the right to defend himself, stand his ground, and use the amount of force reasonable under the circumstances. Therefore, the trial court should have instructed the jury with CALJIC No. 5.50 if there was evidence to support it. Rhodes testified he was going to drive away, but Wright had a gun and was so close to the car, he was afraid Wright would shoot him so Rhodes fired his gun. This was sufficient evidence to warrant the instruction.

c. *Prejudice*

Rhodes argues the trial court's instructional errors were prejudicial because they "removed the issue of whether [Rhodes], a convicted felon, acted in . . .

self-defense because his mere possession of a firearm under the instructions given . . . was unlawful." Rhodes also contends the court's instructions were prejudicial because they allowed the district attorney to argue Rhodes, a convicted felon, should not have had a gun and should have retreated, and therefore, he could not claim self-defense. We agree there was prejudicial error.

■ "Omission or removal of a single element from the jury is not . . . 'a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal . . . .' (*People v. Flood* [(2000)] 18 Cal.4th [470], 503 [76 Cal.Rptr.2d 180, 957 P.2d 869] . . . .) We may affirm the jury's verdicts despite the error if, but only if, it appears beyond a reasonable doubt that the error did not contribute to the particular verdict at issue. [Citations.]" (*People v. Sakarias* (2000) 22 Cal.4th 596, 625 [94 Cal.Rptr.2d 17, 995 P.2d 152].)

CALJIC No. 12.50 explains, within the confines of section 12021, those limited circumstances when a felon may lawfully possess a firearm. CALJIC No. 12.50 states a felon may possess a firearm if, among other things, "The use of the firearm was reasonable under the circumstances and *was resorted to only if no alternative means of avoiding the danger were available.*" (Italics added.) The italicized language instructed the jury Rhodes's use of the gun was lawful only if there was no other way to avoid Wright. In other words, Rhodes's actions were lawful only if he could not have retreated to avoid the conflict. This error was compounded because the trial court refused to give CALJIC No. 5.50. The jury was not advised Rhodes could stand his ground and defend himself and by giving CALJIC No. 12.50, the court suggested Rhodes had a duty to retreat. As we explain below, the district attorney's closing argument exacerbated the court's instructional error.

The district attorney stated, "Now . . . it's important to note that because . . . Rhodes is a convicted felon, there are certain circumstances under which his use of a gun may be, may be proper. But he does not have the right as an individual, you and I, to stand his ground and not retreat. As a convicted felon, he doesn't have that right. As a convicted felon, he should have left the scene. He should not have put himself in the situation of, as he says, being threatened. [¶] If he saw something that was going to cause him harm, some person that was going to cause him harm, he had plenty of time to leave the area." Later, the district attorney said, ". . . Rhodes had no right to stand his ground. . . . Rhodes had an obligation to drive off." On at least eight separate occasions, the district attorney stated Rhodes could have "immediately left the area." Finally, the district attorney concluded, "In fact, the one instruction, [CALJIC No.] 12.50, says that if there is another way to evade the situation, to get away from the situation, the convicted felon needs to do that."

██ The effect of giving CALJIC No. 12.50, not giving CALJIC No. 5.50, and the district attorney's emphasis on the trial court's erroneous instruction of the law was prejudicial. The cumulative effect of these misdeeds was to impose upon Rhodes the duty to retreat when there was no such duty. Although the trial court instructed the jury with CALJIC No. 17.31[5] and we assume jurors understand and follow jury instructions (*People v. Mills* (1991) 1 Cal.App.4th 898, 918 [2 Cal.Rptr.2d 614]), we cannot conclude the jury would have determined CALJIC No. 12.50 should be disregarded because it fit within the undisputed evidence offered at trial. Based on all these considerations, we cannot conclude beyond a reasonable doubt that the instructional error did not contribute to the jury's verdict.

## DISPOSITION

The judgment is reversed.

Aronson, J., and Ikola, J., concurred.

A petition for a rehearing was denied June 21, 2005.

---

[5] CALJIC No. 17.31 provides: "The purpose of the court's instructions is to provide you with the applicable law so that you may arrive at a just and lawful verdict. Whether some instructions apply will depend upon what you find to be the facts. Disregard any instruction which applies to facts determined by you not to exist. Do not conclude that because an instruction has been given I am expressing an opinion as to the facts."