Filed 4/3/25  P. v. Loza CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CESAR ANGEL LOZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B330880<br>(Super. Ct. No. BA497350)<br>(Los Angeles County) |

Cesar Angel Loza appeals following a trial at which a jury convicted him of two counts of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b); counts 1 and 2).[1]  The jury also found true allegations that appellant personally used a firearm in committing both offenses.  (§ 12022.5, subd. (a).)  The court sentenced appellant to a total term of six years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

Appellant contends:  (1) the trial court erred in failing to instruct the jury as to self-defense; and (2) the court unconstitutionally burdened his Fifth Amendment right against self-incrimination by requiring his testimony to assert self-defense.  We conclude the court erred in failing to instruct on self-defense.  Therefore, we will reverse the judgment and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

"Because the right to instruction[] on self-defense is the central issue in this appeal, our recital of the evidence introduced at trial is necessarily one emphasizing matters which would justify such instruction[], rather than the customary summary of evidence supporting the judgment." (*People v. King* (1978) 22 Cal.3d 12, 15-16, fn. omitted.)

On July 22, 2021, appellant went to an apartment complex to pick up his baby.  Maritza Aguilar, the child's grandmother, lived there and took care of her grandson.  Appellant was part of a gang and had past issues with rival gang members who resided in the complex.  To avoid having appellant come inside, Aguilar would usually have appellant wait outside the complex's main gate while she or someone else brought the child to him.

On the day in question, appellant entered the complex through a pedestrian gate after another person had opened it.  Appellant walked casually into the complex and took his child from Aguilar.  As appellant headed back to the car and put his baby in it, he repeatedly looked back toward the apartments.  Aguilar told social worker Naicari Mata that appellant exchanged looks with one individual.

Two men—one in a white shirt, the other in a black shirt—advanced quickly toward appellant, with one of the two men reaching behind his back.  Appellant produced a 9-millimeter

semiautomatic handgun and fired multiple shots in the direction of the men. The two men did not come closer than approximately 30 to 35 feet away from appellant. Shortly after firing, appellant drove away. Law enforcement later recovered two 9-millimeter bullet casings in the area.

Three days after the shooting, appellant spoke with social worker Mata. Appellant said he had made arrangements with Aguilar to pick up his child. When he arrived, four individuals jumped him. Appellant secured his child in the car. As appellant was driving off, he almost crashed when he heard gunshots. Mata recalled appellant had a black eye at the time of the interview.

On July 27, 2021, law enforcement asked appellant about the shooting. Appellant indicated he had previously been to the complex for child custody exchanges. But he denied knowledge of and involvement in the shooting.

Appellant's father, Hugo Loza, testified for the defense.[2] On July 17, 2021, Hugo and appellant went to Aguilar's complex to pick up appellant's son. Aguilar gave Hugo the child at the apartment. As they walked back to the car, four men started harassing appellant and threatened, "Don't come to this area no more." All four jumped appellant, "punching him from all angles." Hugo tried to "cool it down," but the men started hitting him too and after the grandmother took her grandson back from Hugo, they hit him on the head with a beer bottle, creating a gash that later required stitches. Appellant grabbed Hugo, threw him in the car's backseat, and drove away.

Appellant suffered a black eye and bruises on his forehead. Hugo indicated the men who attacked him were dressed like gang

---

[2] For clarity, we refer to Hugo Loza as Hugo.

members, but he did not know if they were. On surveillance video from the July 22nd incident, Hugo recognized the man in the white shirt and the man in the black shirt as two of the men from the July 17th incident. Hugo believed the man in the black shirt was the one who hit him on the head with a bottle.

Hugo had never seen appellant with a weapon. Hugo would not know if appellant was a gang member or not. Appellant had tattoos, including an image of a historical figure holding a gun.

Appellant requested the court instruct the jury on self-defense and defense of others. (See CALCRIM No. 3470.) The court declined to do so. The court did not think there was "substantial evidence of what [appellant] believed" when he acted.

## DISCUSSION

"[A] trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) "The trial court must give instructions on every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case." (*People v. Young* (2005) 34 Cal.4th 1149, 1200.) ""Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."" (*People v. Cole* (2004) 33 Cal.4th 1158, 1215 (*Cole*).)

"When deciding whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the evidence, but only whether there is evidence which, if believed by the jury, is sufficient to raise a reasonable doubt of guilt." (*People v. Orlosky* (2015) 233 Cal.App.4th 257,

269-270.) "'"Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused."'"" (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

Our review is de novo. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 584; see also *Cole, supra,* 33 Cal.4th at p. 1217.)

"'To justify an act of self-defense for [an assault charge under Penal Code section 245], the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him.'" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064, italics omitted (*Minifie*).) The belief, in other words, must "subjectively exist[]" and "be objectively reasonable." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 (*Humphrey*).) In assessing the belief's reasonableness, "the jury must consider all of the relevant circumstances in which [the] defendant found [himself]." (*Id.* at p. 1083.) Moreover, "[t]he threat of bodily injury must be imminent . . . , and ' . . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.'" (*Minifie* at pp. 1064-1065; see also *People v. Brady* (2018) 22 Cal.App.5th 1008, 1014; *People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 212.)

Substantial evidence supported the theory that appellant acted in self-defense. Just five days before the shooting, four men jumped appellant under similar circumstances. The attack left appellant with a black eye and forehead bruises. Appellant's father Hugo sustained a blow to the head with a beer bottle. The gash he received required stitches. Appellant was also threatened not to come to that area anymore. The physical beating appellant received implied this threat was not idle.

When appellant returned to the area to pick up his child, two of the men who had previously attacked him advanced quickly toward him. Based on the video, Aguilar testified the two

5

men were "running after him . . . ." One of the men reached behind his back in a manner consistent with retrieving a weapon. At this point, given the antecedent assault and threat, a reasonable jury could have been persuaded that appellant harbored an actual, reasonable belief of imminent bodily injury. Such a jury could further conclude that appellant's firing was a reasonable use of force under the circumstances.

Although appellant did not testify, "'substantial evidence of a defendant's state of mind may be found in the testimony of witnesses other than a defendant.'" (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 82; see also *People v. De Leon* (1992) 10 Cal.App.4th 815, 824.) For example, in *People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262, the defendant did not testify in a trial centering on a gang-related shooting. Nonetheless, the evidence supported instruction on self-defense in part because the jury could find "an actual belief . . . in imminent peril" if it credited other testimony. (*Id.* at p. 1263.) Likewise, here, substantial evidence exists even without appellant's testimony.

Respondent asserts the "'evidence' of self-defense was minimal and insubstantial conjecture based entirely on the testimony of an interested party." First, Hugo's testimony was not the only evidence of self-defense. The two men's menacing conduct the day of the shooting also factored heavily into appellant's self-defense claim. Second, Hugo's testimony supported more than mere conjecture. He provided a firsthand account—corroborated both by photographic evidence and a black eye the social worker observed—that allowed for rational inferences as to appellant's belief when he returned to the complex days later. "'[A] defendant is entitled to have a jury take into consideration all the elements in the case which might be expected to operate on his mind . . . .'" (*Humphrey*, *supra*, 13

6

Cal.4th at p. 1083.)  Third, interested party or not, "[i]f the evidence is substantial, the trial court is not permitted to determine the credibility of witnesses, which is a task for the jury."  (*People v. Lee* (2005) 131 Cal.App.4th 1413, 1426; see also *People v. Schuller* (2023) 15 Cal.5th 237, 262.)

Appellant's decision to return to the complex after being attacked and threatened did not foreclose a self-defense claim.  Generally, a person "is not compelled to turn out of [their] way to avoid [an] expected unlawful attack."  (*People v. Gonzales* (1887) 71 Cal. 569, 578; see also *People v. Rhodes* (2005) 129 Cal.App.4th 1339, 1348 [reversing where instruction and argument "impose[d] . . . the duty to retreat when there was no such duty"].)  As discussed above, far from undermining appellant's self-defense claim, the prior attack and threat helped substantiate it.  (Cf. *People v. Garvin* (2003) 110 Cal.App.4th 484, 488.)

Appellant denying involvement in the shooting to law enforcement does not change the result.  That denial does not negate the evidence supporting appellant's actual, reasonable belief that bodily injury was about to be inflicted on him at the time of the shooting.  We conclude the evidence, resolving doubts in appellant's favor, required the court to instruct the jury on self-defense.  This conclusion should not be confused with a finding that appellant, in fact, acted in self-defense.  Rather, we determine that a reasonable jury could have been so persuaded.

The California Supreme Court has "yet to determine whether a trial court's failure to instruct on a requested affirmative defense instruction supported by substantial evidence is federal constitutional error or state law error."  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199; see also *People v. Schuller* (2023) 15 Cal.5th 237, 260.)  The trial court's failure to instruct

7

was not harmless under any prejudice standard.  (See *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]; *People v. Watson* (1956) 46 Cal.2d 818.)  The error effectively prevented the jury from considering appellant's theory of the case.  We have already detailed the body of evidence in support of that theory.  Moreover, within ten minutes of beginning deliberations, the jurors buzzed with the following question:  "That the judge confirms we cannot consider self-defense.  We would like to understand why if that is the instruction of the court."  The content and timing of this question suggest the jury wanted to consider self-defense and would have done so but for the court's ruling.

On this record, we cannot deem the error harmless.  Therefore, we reverse and remand.  In light of this disposition, we do not address appellant's constitutional claim.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

8

Terry A. Bork, Judge
Superior Court County of Los Angeles

_____

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.