# United States Court of Appeals
## For the First Circuit

No. 15-2253

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR LOPEZ-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta
Circuit Judges.

Jamesa J. Drake, with whom Drake Law, LLC was on brief, for appellant.
Mainon A. Schwartz, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

November 8, 2017

**KAYATTA**, **Circuit Judge**. Victor Lopez-Ortiz appeals the revocation of his supervised release and the imposition of a statutorily authorized, but above-guidelines, three-year term of imprisonment. He contends that the district court improperly shifted the burdens of production and persuasion at his final revocation hearing, an error requiring remand and resentencing. For the reasons described below, we affirm the judgment and sentence.

## I.

In early 2015, Lopez-Ortiz completed a sentence of imprisonment for conspiring to distribute cocaine in violation of federal laws. Just three months into an eight-year term of supervised release, he was charged with repeatedly violating the conditions of that release.

The charges against Lopez-Ortiz led to a hearing on the government's motion to revoke his supervised release. Revocation involves two stages. First, the court conducts a preliminary hearing "to determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A). Second, the court holds a final revocation hearing, at which the defendant has "an opportunity to appear, present evidence, and question any adverse witness" and to "present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(C), (E).

At Lopez-Ortiz's preliminary revocation hearing on August 11, 2015, the probation officer responsible for Lopez-Ortiz testified that Lopez-Ortiz had reported an address of record at which he did not actually live, failed to appear for scheduled drug tests on three occasions, admitted to another probation officer that he was using synthetic marijuana, failed to attend scheduled mental health treatment, and failed to remain at his transitional housing program and follow its rules, all in violation of several stated conditions of his supervised release. On cross-examination, defense counsel raised no challenge to the officer's description of Lopez-Ortiz's conduct. Rather, counsel sought to question the witness about the results of a mental health examination performed on Lopez-Ortiz at his counsel's request prior to the hearing. The government objected, arguing that Lopez-Ortiz's mental health assessment was irrelevant to whether probable cause existed for the charged violations. Defense counsel responded that the information about Lopez-Ortiz's mental health went "directly . . . to why he didn't participate" in the scheduled mental health treatment. The government noted that defense counsel must therefore be "making an admission that he violated the conditions." Counsel for Lopez-Ortiz did not respond to this characterization, and the questioning continued. At the conclusion of the hearing, the magistrate judge determined that probable cause existed for the charged violations.

Before the final revocation hearing, counsel for Lopez-Ortiz filed a motion requesting a continuance and updating the court on the status of the case. In addition to requesting the continuance due to a scheduling conflict, defense counsel used the motion to explain Lopez-Ortiz's position. That explanation eschewed any contention that Lopez-Ortiz had not acted as charged by the government. Instead, counsel argued that "[o]f the alleged violations, the only one which by statute requires mandatory revocation [is] the failure to attend drug testing" and that Lopez-Ortiz "did not violate said condition willfully and voluntarily." Counsel also requested that "should the Court find that he willingly and voluntarily incurred in [sic] any of the alleged violation[s] other than the drug testing, his supervision be modified rather than revoked." The motion further admitted that Lopez-Ortiz, "without the [probation office's] consent, squatted an apartment in [a] housing project and refused to leave the apartment to attend appointments scheduled by [the probation office]," claiming that Lopez-Ortiz did so "due to fear for his [life]." Finally, the motion excerpted a portion of the report of the psychologist, Dr. Alexandra Ramos, who conducted Lopez-Ortiz's mental health examination, noting that the report's excerpt "summarizes the arguments which will be presented at the final revocation hearing." The report concluded that a "combination of factors is the reason why [Lopez-Ortiz] violated the terms of his

- 4 -

probation by fleeing his placement and not participating in mental health treatment."

The beginning of the final revocation hearing evidenced some confusion over which party should proceed first. Over Lopez-Ortiz's objection, the district court ordered his counsel to proceed first, stating that the burden is "on you."[1]

Defense counsel then called two witnesses: (1) Lopez-Ortiz's probation officer and (2) the psychologist who evaluated Lopez-Ortiz and authored the report containing her evaluation. Both witnesses testified on direct examination that Lopez-Ortiz did not comply with certain conditions of his supervised release. The probation officer testified that Lopez-Ortiz had "left the housing project" at which he was supposed to remain and "did not attend" a scheduled appointment. The psychologist testified that a "combination of . . . factors," including "a limited intellectual capacity," a "severe beating" Lopez-Ortiz had endured, "the use of synthetic marijuana," "and the perceived threat on his life and subsequent paranoia," "explains why he violated the conditions of

---

[1] THE COURT: [To the defendant] Have you decided what, how are we going to proceed in this case? Are you going to want the hearing, or are you going to waive the hearing?
THE DEFENDANT: I want it to be held.
THE COURT: All right. Call your first witness.
[DEFENSE COUNSEL]: Your Honor, I understand the burden is on the government.
THE COURT: No. It's on you.
[DEFENSE COUNSEL]: Okay.

his supervised release."  The government cross-examined both witnesses, eliciting further testimony that Lopez-Ortiz abandoned his transitional housing program, failed to report for mental health treatment, failed to follow the probation officer's instructions, and missed three scheduled drug tests in February and March of 2015.

The court concluded that "it is a fact that [Lopez-Ortiz] has violated the conditions of his supervised release." The court further explained that it had read the psychologist's report as to Lopez-Ortiz's mental health and agreed that "he needs treatment."  The court then revoked Lopez-Ortiz's supervised release.  Lopez-Ortiz unsuccessfully sought reconsideration, arguing again that his violations were not voluntary because of his mental health issues.  The court sentenced Lopez-Ortiz to a three-year term of imprisonment, the maximum allowed under 18 U.S.C § 3583(e)(3), plus three years of supervised release.  The court also stated that it would "strongly recommend to the Bureau of Prisons that . . .  Mr. Lopez-Ortiz be designated to serve this sentence at the Butner Medical Institute in Butner, North Carolina, so that he can receive inpatient substance abuse treatment" and other health services.

**II.**

Lopez-Ortiz contends that the district court erred in announcing that he bore "the burden of proof and persuasion."

Although that was not quite what the district court said, the government does not seem to contest Lopez-Ortiz's spin on the district court's statement, or that the district court erred. The government also says that the district court erred because it "required that Lopez-Ortiz present evidence at the final revocation hearing," which is also not what the court said.

We think it more likely that the district court presumed, although failed to confirm, that there was no challenge to the fact of a violation, and that Lopez-Ortiz simply wanted to "present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(E). Nevertheless, given the government's acquiescence, we will assume that the district court did indeed err in announcing that Lopez-Ortiz need proceed first as the party with the burdens of production and proof. So the pivotal question is whether and with what degree of confidence we can say there was no harm. Claiming that his constitutional due process rights are at stake, Lopez-Ortiz argues that we should vacate his sentence unless we can find that the assumed error was harmless beyond a reasonable doubt, citing Chapman v. California, 386 U.S. 18, 24 (1967). Whether that is the appropriate standard we need not decide because any error here was harmless by any measure.

To explain why this is so, we train our attention on what was at issue in the final revocation hearing. As the parties' pre-hearing filings made clear, Lopez-Ortiz indisputably conducted

- 7 -

himself as claimed by the government.  Even on appeal, Lopez-Ortiz

forthrightly makes no argument that he did not act as charged.

In theory, the parties' concordance nevertheless left

unresolved the question of mens rea.  The relevant statute, 18

U.S.C. § 3583(e)(3), authorizes revocation of a term of supervised

release in favor of imprisonment if, pursuant to Federal Rule of

Criminal Procedure 32.1, the court "finds by a preponderance of

the evidence that the defendant violated a condition of supervised

release."  Revocation is mandatory if the defendant "refuses to

comply with drug testing imposed as a condition of supervised

release."  18 U.S.C. § 3583(g)(3).  Although the statute makes no

express mention of any mens rea requirement, the word "refusal"

arguably implies some such element, and at least one circuit court

has squarely held that revocation requires that a violation be

"knowing."  See United States v. Napulou, 593 F.3d 1041, 1045 (9th

Cir. 2010); see also United States v. Muñoz, 812 F.3d 809, 822–23

(10th Cir. 2016) (reading a "knowing" standard into a condition of

supervised release); United States v. Adkins, 743 F.3d 176, 196

(7th Cir. 2014) (noting that Due Process requires clarity in

supervised release prohibitions).  Such a conclusion is consistent

with our own case law presuming that one generally need know the

facts that make one's conduct unlawful in order to be convicted of

a crime.  See United States v. Ford, 821 F.3d 63, 74–75 (1st Cir.

2016).  So, had there been a dispute concerning whether Lopez-

Ortiz knew that he was missing his required drug testing, an order that he must proceed first to prove a lack of such knowledge might well have caused prejudice.

Here, though, Lopez-Ortiz never even hinted that he was unaware that he was skipping his required drug testing. To the contrary, even before the final revocation hearing he left undisputed the evidence that he understood his obligation to appear for drug testing, and understood that he was choosing to fail to appear. The probation officer testified at the probable cause hearing that he spoke with Lopez-Ortiz on the phone about his obligation to attend drug testing. His counsel never suggested any interest in challenging the existence of such awareness. And on appeal he makes no claim that his conduct was not knowing.

Instead, counsel sought to present evidence from a psychologist aimed at establishing that Lopez-Ortiz did not act in a manner that was "truly voluntary." In the words of the psychologist, "a combination of a limited intellectual capacity, [a] severe beating, the use of synthetic marijuana and [a] perceived threat on his life and subsequent paranoia impaired his . . . ability . . . to make a decision and evaluate the consequences of his actions." This "combination of factors,"

opined the psychologist, "explains why he violated the conditions of his supervised release."[2]

The problem for Lopez-Ortiz is that he can cite no precedent suggesting that "involuntariness" in the sense of being fearful or experiencing duress negates an element of the charged violation. The Model Penal Code does state that a person "is not guilty of an offense unless [his or her] liability is based on conduct that includes a voluntary act." Model Penal Code § 2.01(1). But, an omission constitutes a voluntary act when "[he or she] is physically capable" of performing an act, and has some duty to perform it. Id. § 2.01(1), (3) (noting that omission liability must be based on a legal duty to act or an express statement in the law that the omission constitutes the offense). Involuntary acts are the product of "reflexes, convulsions, and movements occurring during unconsciousness," United States v. Torres, 74 M.J. 154, 158 (C.A.A.F. 2015), as well as actions performed while sleepwalking, Smith v. State, 663 S.E.2d 155, 157 (Ga. 2008). Proof that one acts due to addiction, or out of fear, is not proof that one acts involuntarily. See Powell v. Texas, 392 U.S. 514, 535 (1968) (plurality opinion) (alcoholism); United States v. Solorzano-Rivera, 368 F.3d 1073, 1080–81 (9th Cir. 2004) (fear of police harassment).

---

[2] Lopez-Ortiz appears to have feared for his life if he ventured outside.

This is not to say that Lopez-Ortiz's evidence was irrelevant. We can assume (without deciding) that it may have provided some type of affirmative defense, such as duress. Certainly, such proof might have been submitted under Rule 32.1 as grounds for mitigation. In either event, though, Lopez-Ortiz would have borne the burden of proof for those subjects. Cf. Dixon v. United States, 548 U.S. 1, 17 (2006) (absent legislation to the contrary, the defendant in a criminal trial bears the burden of proving a defense of duress); see also Fed. R. Crim. P. 32.1(b)(2)(C), (E) (allowing the defendant to "present evidence" and "present any information in mitigation").

As an alternative argument, Lopez-Ortiz posits that the district court settled on a longer prison sentence than it otherwise would have imposed because it placed the burden on Lopez-Ortiz to convince the court that something shorter than the three-year maximum was appropriate. Whatever one might think of this argument in the abstract, it fails in practice. In explaining the sentence, the district court evidenced no hint that the burden of proof played any role at all. The district court expressly relied on the entirely undisputed factual information submitted by the government prior to the hearing (as confirmed at the hearing).

Nor did the court reject the evidence offered by Lopez-Ortiz in mitigation. While the court properly did not view that evidence as relevant to determining whether the charged violations

occurred, or whether Lopez-Ortiz knew what he was doing, the court indicated that it was "impressed by the report submitted by Dr. Ramos." The court also expressly agreed with Dr. Ramos's recommendation that Lopez-Ortiz be placed in a drug treatment program in a restricted area, such as a prison with adequate resources. This recommendation caused the court to "strongly recommend to the Bureau of Prisons that based on the evaluation performed by Dr. Ramos . . . Lopez-Ortiz be designated to serve [his] sentence at the Butner Medical Institute in Butner, North Carolina, so that he can receive inpatient substance abuse treatment" and other health services.

In sum, Lopez-Ortiz knowingly violated the terms of his supervised release. The only issue was what significance should be assigned to the testimony of Lopez-Ortiz's expert in sentencing. The district court actually accepted the factual gist of that testimony (that Lopez-Ortiz was psychologically resistant to compliance with the key terms of supervised release), rejecting only the fully mitigative import defense counsel would draw from that testimony. On such a record, the manner in which the district court proceeded could not have caused Lopez-Ortiz any improper prejudice.

### III. Conclusion

We <u>affirm</u> the judgment and sentence.