NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 13 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   17-30236 |
| Plaintiff-Appellee, | DC No. 1:17-cr-02025-LRS-1 |
| v. | |
| CARLOS NAVARRO, AKA Scorpion, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
For the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Submitted November 7, 2018[**]
Seattle, Washington

Before:  McKEOWN and FRIEDLAND, Circuit Judges, and BOLTON,[***] District Judge.

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]       The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

Appellant appeals the district court's denial of a motion to suppress, application of a sentencing enhancement, and imposition of supervised release conditions that burden Appellant's right to familial association.[1] Appellant was arrested on June 2, 2017, in Yakima, Washington, in connection with an alleged gang-related drug transaction. Appellant was ultimately charged with and pled guilty to being a Felon in Possession of a Firearm and Ammunition, and sentenced to a 51-month term of imprisonment. 18 U.S.C. § 922(g)(1). Over Appellant's objection, the court imposed, among others, two no-contact conditions: (1) requiring Appellant to refrain from knowingly communicating or interacting with someone engaged in criminal activity, and requiring permission from his probation officer to knowingly communicate with a convicted felon; and (2) requiring Appellant to refrain from knowingly communicating, associating, or interacting with any street gang member or affiliate without permission from his probation officer. Appellant objected to these conditions, because as written, they prohibit contact with his children. We have jurisdiction under 28 U.S.C. § 1291, and for the reasons that follow, we affirm in part and vacate in part, and we remand for the

---

[1] Appellant also seeks to preserve the issue of whether his Washington state felony conviction for harassment – threat to kill qualifies as a crime of violence. Appellant concedes that the district court's treatment of that felony conviction was correct under existing Ninth Circuit precedent. *See United States v. Werle*, 877 F.3d 879, 884 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1578 (2018).

district court to reconsider the no-contact conditions.

We review de novo the district court's denial of a motion to suppress, but review the underlying factual findings for clear error. *United States v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 636 (2018). We review the district court's application of the United States Sentencing Guidelines ("Guidelines") for abuse of discretion. *United States v. Noster*, 590 F.3d 624, 634 (9th Cir. 2009). When trial counsel objects to conditions of supervised release set by the district court, we review for abuse of discretion, and we review carefully conditions impacting fundamental rights. *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010); *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988).

Appellant contends that the district court erred in holding that Officer Chad Urwin ("Officer Urwin") legally stopped him.[2] An officer may conduct a brief investigatory stop where the officer has reasonable, articulable suspicion that an individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Courts look at the totality of circumstances to determine whether an officer reasonably suspected criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). While there is no comprehensive list of factors, whether a group of individuals is potentially behaving as a unit and whether a stop occurred in a

---

[2] The court found that Appellant was "seized" within the Fourth Amendment when Officer Urwin instructed Appellant to step outside and place his hands atop the sedan. The Government did not cross-appeal this portion of the order.

"high-crime area" are both relevant considerations. *See Lyall v. City of L.A.*, 807 F.3d 1178, 1194–95 (9th Cir. 2015); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Officers may also make inferences that draw upon their specialized training and experience in the field. *Arvizu*, 534 U.S. at 273. Here, Officer Urwin did just that.

Officer Urwin was aware of the following set of facts when he decided to stop Appellant: (1) Appellant was in a high-crime area—a place where Officer Urwin had participated in at least 75 arrests; (2) an apparent "hand to hand" drug deal occurred between two males located next to a van, which seemed to be deliberately parked adjacent to Appellant's Dodge Neon sedan; (3) Appellant was standing just outside the sedan's passenger door, slightly behind a group of men who were standing outside the van's open door; (4) three males in the group— including Appellant—were dressed in red attire, which is associated with the Norteño gang. Looking at the totality of the circumstances, including Officer Urwin's specialized training and experience, Officer Urwin had reasonable suspicion to detain Appellant.

Appellant additionally argues that the district court erred in adopting Officer Urwin's statement that the Yakima Inn (the "Inn") was located in a "high-crime area." But Appellant's reliance on *United States v. Montero-Camargo* undercuts his argument because the court did carefully examine both Officer Urwin's

4

testimony and relevant evidence—including testimony from the manager of the Inn,[3] and Deputy United States Marshal Christopher Smith ("Deputy Smith")—to determine that the descriptor "high-crime" was "fair and forthright." 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc).

Appellant argues that Deputy Smith lacked reasonable suspicion to frisk him. Where an officer reasonably believes that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime, the officer can conduct a reasonable search for weapons. *Terry*, 392 U.S. at 27. An officer's search must be reasonable both at its inception and as conducted; even in high-crime areas, *Terry* demands individualized suspicion under the totality of the circumstances. *Id*. at 27–28; *Thomas v. Dillard*, 818 F.3d 864, 877 (9th Cir. 2016). Here, Deputy Smith drew upon his personal experience and personal knowledge of Appellant's gang membership and criminal history and observations of Appellant's furtive movements inside the sedan. *See United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983). Deputy Smith therefore reasonably suspected that Appellant was armed and dangerous and permissibly frisked him.

Appellant argues that the district court abused its discretion by applying the

---

[3] The manager, who has worked at the Inn for nine years, testified that the Inn frequently experiences issues that require police response.

four-level increase for use or possession of a firearm in connection with another felony offense. U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2018). Section 2K2.1(b)(6)(B) applies if the firearm or ammunition facilitated (or had potential to facilitate) another felony offense.[4] *See* USSG § 2K2.1 cmt. n.14(A) (U.S. Sentencing Comm'n 2018). Possession of methamphetamine is a class B felony in Washington State, and the proximity of the firearm to the methamphetamine permits an inference that possession of the firearm potentially emboldened the possession of the methamphetamine. *United States v. Routon*, 25 F.3d 815, 819 (9th Cir. 1994) ("[T]o the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that . . . had some potential emboldening role . . . in a defendant's felonious conduct."); Wash. Rev. Code § 69.50.401(2)(b) (2015); *see also United States v. Valenzuela*, 495 F.3d 1127, 1135 (9th Cir. 2007) (explaining that where defendant had a firearm under his seat, the firearm could have reasonably emboldened his possession of stolen property). Appellant kept the firearm in an easily accessible location—his waistband—while out in public. *See Routon*, 25 F.3d at 819; *Valenzuela*, 495 F.3d at 1135. And the proximity of the

---

[4] "Another felony offense" includes "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1 cmt. n.14(C) (U.S. Sentencing Comm'n 2018).

firearm to the two bindles of methamphetamine—one bindle was on a keychain on Appellant's person and the other was inside his shirt pocket—confirms that the court did not abuse its discretion in applying the four-level increase.

Finally, as his sons are members of the Norteño gang (one of whom is currently in jail facing felony charges), Appellant argues that the district court must support its decision to impose the no-contact conditions on the record with record evidence and comply with heightened procedural safeguards. *See United States v. Stoterau*, 524 F.3d 988, 1005 (9th Cir. 2008). Where conditions of supervised release implicate a "particularly significant liberty interest," the district court must justify its imposition of the condition on the record with record evidence that the condition is necessary to accomplish one or more of the factors listed in 18 U.S.C. § 3583(d)(1), and explain why it involves no greater deprivation of liberty than is reasonably necessary. *United States v. Weber*, 451 F.3d 552, 561 (9th Cir. 2006). And when a condition affects the right to familial or intimate association, "the district court must 'undertake an individualized review' on the record of the relationship between the defendant and the family member at issue to determine whether the restriction is necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation." *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012) (citing *Napulou*, 593 F.3d at 1047; *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive

due process right to . . . familial association is well established."). It is not enough that a reviewing court may assemble such evidence from its own review of the record, and the court's failure to comply with heightened procedural requirements cannot be remedied by delegating authority to a probation officer to mitigate the severity of the limiting condition by allowing contact with family members. *Wolf Child*, 699 F.3d at 1092, 1095–96.

Here, the district court committed procedural error. While it is clear that the court did not intend to preclude contact between Appellant and his sons, the court failed to satisfy the explicit requirement of on-the-record individualized findings and justifications for the no-contact conditions that it nevertheless imposed. *See Napulou*, 593 F.3d at 1047; *Stoterau*, 524 F.3d at 1005. As written, the no-contact conditions violate Appellant's substantive due process rights. *See Rosenbaum*, 663 F.3d at 1079. Accordingly, we vacate those conditions and remand to the district court with instructions either to make the required findings and justifications for the no-contact conditions, or, alternatively, to carve out an exception to the no-contact conditions that allows Appellant to interact with his sons.

**AFFIRMED in part, and VACATED and REMANDED in part.**