NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 6 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-2132 |
| Plaintiff - Appellee, | D.C. No. 4:18-cr-00158-JD-1 |
| v. | |
| DAHRYL LAMONT REYNOLDS, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted March 3, 2025
San Francisco, California

Before: WARDLAW, PAEZ, and BEA, Circuit Judges.
Dissent by Judge PAEZ.

Dahryl Reynolds appeals the district court's imposition at sentencing of a

standard condition of supervised release that instructed that he "must not associate,

communicate, or interact with" any person he knows has been convicted of a

felony, unless granted permission to do so by the probation officer ("felon

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

association ban").[1]  Pursuant to 18 U.S.C. § 3583(d), district court judges may impose discretionary conditions of supervised release that are "reasonably related" to certain sentencing factors, *see* 18 U.S.C. § 3553(a), and that "involve[] no greater deprivation of liberty than is reasonably necessary."  "We review for abuse of discretion the conditions of supervised release set by the district court and challenged on appeal when trial counsel objects to a supervised release condition." *United States v. Aquino*, 794 F.3d 1033, 1036 (9th Cir. 2015) (citation, quotation marks, and ellipsis omitted).  We have jurisdiction under 28 U.S.C. § 1291.  We affirm.

1.      The district court did not abuse its discretion in determining that the felon association ban was reasonably related to the relevant sentencing factors: "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to deter future criminal conduct, protect the public, and rehabilitate the defendant.  18 U.S.C. § 3553(a); *see* 18 U.S.C. § 3583(d)(1) (citing relevant subsections).  "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful

---

[1]      In Reynolds's prior appeal, we vacated the imposition of any condition of supervised release that had not been orally pronounced at sentencing pursuant to *United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023) (en banc). *United States v. Reynolds*, No. 21-10368, 2024 WL 62950 (9th Cir. Jan. 5, 2024). Those included the felon association ban at issue on this appeal.

consideration" of the relevant factors. *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012).

Although the felon association ban is a standard condition used in the Northern District of California, the district court imposed it here after considering each of the factors in 18 U.S.C. § 3583(d)(2) as applied to Reynolds's individual circumstances.[2] The district court expressly stated that it did not matter "whether this were a standard condition or a custom tailored one," but the relevant question instead was whether the condition "fit the circumstances of this defendant." In imposing the condition, the district court considered (1) Reynolds's lengthy criminal history "distinguished by the frequent and violent use of firearms and guns and also very closely associated with trafficking illegal narcotics"; (2) that Reynolds was living and interacting with a known felon and was on supervised release with a felon association ban condition when he committed the underlying crimes; and (3) Reynolds had history of associating with felons during his "lifelong" criminal history.

2.      The district court did not abuse its discretion in concluding that the

---

[2]      Thus, we do not reach the question of whether the condition when applied in circumstances distinct from Reynolds' is overbroad. *Cf. United States v. Napulou*, 593 F.3d 1041 (9th Cir. 2010). And we question whether Reynolds even has standing to assert a claim of overbreadth because the district court has already conducted an individualized analysis, so this claim would not be redressable. *See Novak v. United States*, 795 F.3d 1012, 1019–20 (9th Cir. 2015).

felon association ban was not a greater deprivation of liberty than was reasonably necessary for both rehabilitation and to protect the public. "District courts are given some discretion in fashioning conditions of supervised release in part because of our uncertainty about how rehabilitation is accomplished." *United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009). Here, the district court permissibly concluded that the felon association ban "has proven over time in many, many, many cases to promote the rehabilitation of defendants and to protect the public interest from future crimes," and, here, Reynolds' "hanging out with people who are felons" was not helping Reynolds, nor was it "in the public interest," as he was arrested while he was "firing off a firearm randomly in the street."

We have previously upheld conditions of supervised release that broadly restrict the defendant's associations. *See, e.g.*, *Malone v. United States*, 502 F.2d 554, 555–57 (9th Cir. 1974) (upholding a prohibition on the defendant's association with people involved in the American Irish Republican movement); *United States v. Soltero*, 510 F.3d 858, 866–67 (9th Cir. 2007) (per curiam) (upholding a prohibition on the defendant's association with members of a gang). Here, the ban is somewhat narrowed because it prohibits association only with those Reynolds knows to have felony convictions, and because it allows Reynolds's probation officer to make exceptions. The district court also

acknowledged that Reynolds' brother and sister-in-law had decades-old felony convictions, and instructed the Probation Office that "all things being equal, family-member access should get a little bit of priority." Thus, the district court did not abuse its discretion by concluding that the condition did not work a greater deprivation of liberty than reasonably necessary.

**AFFIRMED.**

FILED

MAY 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PAEZ, Circuit Judge, dissenting:

I respectfully dissent. In my view, as applied here, the condition that

Reynolds not "associate, communicate, or interact with any person [he] know[s]

has been convicted of a felony, unless granted permission to do so by the probation

officer" involves a "greater deprivation than is reasonably necessary," 18 U.S.C.

§ 3583(d). Because this condition is overbroad as applied to Reynolds, the district

court's imposition of this condition was an abuse of discretion. *See United States

v. Wolf Child*, 699 F.3d 1082, 1089, 1100 (9th Cir. 2012).

This condition is a standard condition of supervised release.[1] But it is not a

mandatory one. *See* 18 U.S.C. §§ 3563(a), 3583(d). Congress has instructed that a

court may only impose a non-mandatory condition of supervision if: (1) the

condition is "reasonably related to" the statutory goals of deterrence, protecting the

public, and rehabilitation, and (2) the condition "involves no greater deprivation of

---

[1] This condition is included on the U.S. Sentencing Commission's list of thirteen "standard" conditions of release included in the U.S. Sentencing Guidelines. *See* U.S. Sent'g Guidelines Manual § 5D1.3(c)(8) (U.S. Sent'g Comm'n 2024). "In the language of the Sentencing Guidelines, 'standard' conditions should be distinguished from 'mandatory' conditions. The later must be imposed on any defendant placed on supervised release, while the former are merely recommended to the extent that they serve the purposes of sentencing." *United States v. Evans*, 883 F.3d 1154, 1162 n.4 (9th Cir. 2018) (citation omitted).

1

liberty than is reasonably necessary" to fulfill those goals. *Id.* § 3583(d)(1)-(2); *see Wolf Child*, 699 F.3d at 1100.

The majority correctly observes that we have upheld conditions of supervised release that restrict a defendant's associational rights on several occasions. But, in those cases, the associational restrictions were narrowly tailored to specific risk factors based on the defendants' criminal history. *See, e.g.*, *Malone v. United States*, 502 F.2d 554, 555-57 (9th Cir. 1974); *United States v. Romero,* 676 F.2d 406, 407 (9th Cir. 1982); *United States v. Ross,* 476 F.3d 719, 721-22 (9th Cir. 2007).

This case involves a far broader associational restriction, analogous to the one we rejected in *United States v. Napulou*, 593 F.3d 1041, 1045 (9th Cir. 2010). In *Napulou*, we held that a condition prohibiting a defendant from associating with anyone with a misdemeanor conviction was overbroad. *Id.* The crux of our decision was that "a person with a past record may be entirely law-abiding today." *Id.* (quoting *United States v. Furukawa*, 596 F.2d 921, 922-23 (9th Cir. 1979)). Certainly, many people with felony convictions are capable of rehabilitation and may become law-abiding citizens. Neither the government nor the district court suggest otherwise. Thus, much like the group of *all* people with *any* misdemeanor conviction, a group of *all* people with *any* felony conviction sweeps more broadly

2

here than a group of "old haunts and associates" or other more tailored groups, like "persons who have been convicted of drug offenses." *Id.* at 1045-46.[2]

As applied here, the felon association ban is overbroad. The district court found that "hanging out with people who are felons" was not helping Reynolds. To be sure, Reynolds has an extensive criminal history. Even so, nearly all of his offenses are related to controlled substances and substance use. And while the instant offense involved an association with a person with a felony conviction, a five-year restriction on associating, communicating, and interacting with such a large class of people is, in my view, a significant deprivation of liberty. This restriction sweeps broadly, including any person with a felony conviction for any offense from any point in time, and prohibiting not only associations but any interaction with them. As applied here, this group would include people close to Reynolds, like his immediate family, and could easily include friends, neighbors, a boss or coworker, or a sponsor in a support group. *See Wolf Child*, 699 F.3d at 1101. Practically speaking, Reynolds would have to "obtain prior written approval from his probation officer before, for instance, . . . meeting a close family member

---

[2] *Napulou* observed that misdemeanors encompass a wide range of minor offenses in support of its conclusion, but the decision did not turn on a distinction between misdemeanor and felony convictions. *See id.* at 1045-46 (relying instead on a distinction between past criminality and present criminality). In any event, felonies also range widely in severity and in many cases, may be minor. *See Tennessee v. Garner*, 471 U.S. 1, 14 (1985) (recognizing that "today the distinction [between felonies and misdemeanors] is minor and often arbitrary").

or friend for coffee, or going to an AA meeting or [another] function with others seeking to improve their own lives." *Id.* He "might even find himself prohibited from joining his coworkers in the lunch-room or at a social activity sponsored by his employer." *Id.* This would be the case even if the relevant felony conviction involved an offense completely unrelated to Reynolds's past offenses, the person had not been charged with or convicted of a crime in decades, or the person was a mentor in an accredited drug-treatment or rehabilitation program.

Because this restriction is overbroad as applied to Reynolds, its imposition was an abuse of discretion. The "district court seems not to have considered the possibility that less restrictive limitations with more relevant and narrowly limited conditions might have alleviated some of its concerns." *Id*. The district court could have perhaps "craft[ed] alternative language that achieves the legitimate purposes of supervised release without sweeping too broadly." *See United States v. Johnson*, 626 F.3d 1085, 1091 (9th Cir. 2010). For example, the district court could have considered limiting Reynolds from associating, communicating, or interacting with individuals with felony convictions less than five years or ten years old, individuals with certain felony drug or firearm convictions, individuals with more than one felony conviction (i.e., those who have a history of recidivism), individuals with felony convictions who are also on supervised release or probation, or individuals with felony convictions outside the context of a

4

designated rehabilitative program. Any one of these conditions would have prohibited Reynolds's association with the man who contributed to Reynolds's instant conviction.

Furthermore, in addition to the felon association ban, the district court imposed more than thirty other conditions of supervision on Reynolds, diminishing the need for such a sweeping prohibition. For example, Reynolds must report to his probation officer as instructed; participate in drug testing and treatment; not possess or use controlled substances; not own, possess, or have access to a firearm or ammunition; subject himself to suspicionless searches; abstain from the use of all alcoholic beverages; and not communicate or interact with anyone he knows is engaged in criminal activity.

Given the numerous less restrictive alternatives to the felon association ban, the comprehensive scope of the other conditions of supervised release, and the link between Reynolds' criminal history and substance use, I fail to see how a prohibition on associating, communicating, and interacting with *any* person Reynolds knows has been convicted of *any* felony at *any* time is not a "greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d). The district court thus abused its discretion in imposing the condition.

Finally, the majority hold that the associational ban is not overbroad in part because Reynolds's probation officer can make exceptions to the prohibition. We

have held, however, that a probation officer's discretion to grant exceptions cannot save an otherwise overbroad condition. *See United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016). As we explained in *LaCoste*, if the imposition of a condition without exceptions is impermissibly overbroad, the imposition of the condition with "open-ended discretion to the probation officer to authorize needed exceptions" remains impermissibly overbroad. 821 F.3d at 1192. *Napulou* confirms this conclusion. There, we held that the associational ban on people with misdemeanors was overbroad "even though special permission may be obtained to associate with a particular individual." *Napulou*, 594 F.3d at 1046; *see also Wolf Child*, 699 F.3d at 1095, 1100.

I recognize that the standard condition at issue here has been imposed on criminal defendants with little issue for decades. A condition's longevity and acceptance among judges does not, however, obviate the need to comply with statutory requirements in each individual case. Because the felon association ban is overbroad as applied to Reynolds, I respectfully dissent.