In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-3090

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADAM BRENT HILL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-cr-30207-NJR-1 — **Nancy J. Rosenstengel**, *Judge.*

SUBMITTED MARCH 10, 2016 — DECIDED APRIL 7, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to receiving child pornography and was sentenced to 10 years in prison plus a fine and restitution and 5 years of supervised release. He filed a notice of appeal, but his lawyer, a federal public defender, asserting that the appeal is frivolous—in which event it should be dismissed without ado—has filed an *Anders* brief asking us for leave to withdraw as

the defendant's lawyer and also advising us that the defendant does not wish to challenge his guilty plea. See *Anders v. California*, 386 U.S. 738 (1967).

We are troubled by only one thing, but an important thing, in the handling of the case so far—how defense counsel and the district judge dealt with conditions of supervised release. At the sentencing hearing defense counsel advised the judge that the defendant did not wish to challenge his guilty plea or any of the proposed conditions of supervised release. All those conditions had been proposed by the probation service in its presentence report, but are nowhere mentioned in the *Anders* brief. The judge did not recite the conditions at the sentencing hearing; and although the defendant said that he had read the proposed conditions and discussed them with his lawyer before the sentencing hearing, the judge didn't ask him whether he was waiving any or all (or none) of the possible objections to them. Before the sentencing hearing the defendant's lawyer had objected to a single condition, the condition forbidding the defendant to use or possess electronic devices able to take photographs or record videos; the probation service had responded to the objection by deleting the condition from the report.

At the sentencing hearing the judge asked the defendant whether he'd "had enough time to review [the presentence report] and discuss it with counsel," and the defendant said he had. Telling the defendant "you have the right for me to read each one of [the conditions of supervised release suggested in the presentence report] and go over them with you," the judge asked him whether he was willing to waive the reading. The lawyer chimed in that he hadn't had an opportunity to discuss waiver with his client, and he asked the

judge to give them "just … a moment" to confer about the matter. The judge obliged, and after what must have been only a brief conference in the courtroom (remember that the judge had given them "just … a moment" to confer) the defendant signed the waiver, which stated that he had no objection to the conditions of supervised release and waived the judge's reading of them.

We cannot be confident that without additional guidance from either his lawyer or the district judge the defendant was capable of knowingly waiving a challenge to any, let alone all, of the conditions of supervised release. A recurrent problem regarding waivers of objections to conditions of supervised release is that because the conditions don't take effect until the defendant is released from prison and criminals often have a high discount rate (meaning they give little weight to events in the future other than the immediate future), a defendant sentenced to a long term of prison (10 years in Hill's case) is quite likely to register no interest in the conditions without prompting by his lawyer; this underscores the importance of guidance from the lawyer and careful inquiry by the judge.

That importance was magnified in this case by the problematic nature of several of the 20 conditions (apart from the 5 mandatory conditions, for which the judge of course was not responsible, see 18 U.S.C. § 3583(d)). One of the problematic conditions is that "the defendant shall not knowingly possess a firearm, ammunition, or destructive device. The defendant shall not knowingly possess a dangerous weapon unless approved by the Court." Does this mean that with the approval of the court the defendant *can* be permitted to possess a "destructive device," such as live ammunition, which

is not a weapon, just as water is not a cup? Could the judge allow the defendant to own a gun, which of course is "a dangerous weapon"?

Another condition states that "the defendant shall report to the probation officer in a manner and frequency directed by the Court or [the] probation officer." Requiring the defendant to report to his probation officer is unexceptionable, *United States v. Thompson*, 777 F.3d 368, 378 (7th Cir. 2015), but shouldn't "manner" and "frequency" be defined, or at least be qualified by "reasonable"? And while in *United States v. Poulin*, 809 F.3d 924, 932 (7th Cir. 2016), we called this condition "a classic administrative requirement that can be imposed without explanation after the judge has explained why supervised release is necessary," the judge in the present case did not explain the why or what of the substantive need for supervised release as distinct from the administrative conditions that she was imposing, saying only that "a five-year term will allow probation to get the defendant with any mental health, sex offender treatment, any treatment that he needs at all to assist him with his employment needs and reintegration back into society, to reduce recidivism, and to protect the public from crimes, and afford specific deterrence. Certainly, we will know within five years if Mr. Hill is true to his word that he is going to turn his life around and become a productive member of society." Thus in effect she left *everything* to the probation service.

As for the condition that requires the defendant to "follow the instructions of the probation officer," shouldn't there be a hint at least at what those instructions might be? Can a probation officer instruct the defendant to do yoga, attend church, or shave off his beard? It's true that a defendant can

always ask the judge to modify or eliminate a condition of supervised release, but how likely is he to do so, at the risk of irritating the judge? Shouldn't "instructions" be qualified by "reasonable"?

Another condition of supervised release requires the defendant to "notify the probation officer at least ten days prior to, or within seventy-two hours after, any change in residence or employment." But would the defendant know when he must notify the probation officer at least ten days prior to a change and when he may wait until after the change? Maybe the idea is that if fired from a job without notice he has 3 days in which to notify his probation officer; but if the employer notifies him that he's being fired at least 10 days in advance of his termination date the defendant must notify his probation officer immediately. Who knows what is meant.

A further problem with this condition is the absence of any indication of what types of change in employment must be reported. We answered that question in *United States v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015), noting approvingly that "the district court [had] required [the defendant] to 'notify Probation … any time you leave a job or accept a job.'" In contrast, in *United States v. Kappes*, 782 F.3d 828, 849 (7th Cir. 2015), we said, quoting *United States v. Thompson*, *supra*, 777 F.3d at 379, that a condition requiring the defendant to notify his probation officer of any "change in … employment" is too vague, because it fails to indicate "whether change in employment just means changing employers or also includes changing from one position to another for the same employer at the same workplace." The same vagueness attends the change-in-employment condition in the present

case. The failure of Hill's lawyer to note this defect seems inexcusable, as it would be unrealistic to suppose that Hill himself would have noticed it.

Another condition imposed in this case, criticized for vagueness in our recent decision in *United States v. Henry*, 813 F.3d 681, 683 (7th Cir. 2016), requires the defendant to "permit a probation officer to visit the defendant … at home *or elsewhere* and shall permit confiscation of any contraband observed in plain view of the probation officer" (emphasis added). We are troubled by the vagueness of "or elsewhere." Again this is a problem neither remarked by the defendant's lawyer nor likely to be identified as problematic by the defendant himself.

Another questionable condition requires the defendant, "while any financial penalties are outstanding, … [to] apply all monies received from income tax refunds, lottery winnings, judgments, and/or any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation." What if the defendant is unemployable, and one or more of these financial gains is his only source of income? Shouldn't his elementary needs be balanced against the government's revenue needs and (less certainly) against claims for restitution by victims of the defendant's crimes? Since financial gain could refer to any income, this condition potentially conflicts with the payment schedule set by the court, which requires Hill to pay either $50 per month or 10 percent of his net monthly income, whichever is greater.

Still another questionable condition, this one also criticized in *United States v. Kappes, supra*, 782 F.3d at 849, requires the defendant to "work regularly at a lawful occupation unless excused by the probation officer for schooling,

training, or other acceptable reasons." The assumption must be that the defendant *can* find regular work. But what if he's unemployable? Is that an "acceptable reason" for not working?

Hopelessly vague is the further condition, again also criticized in *Kappes*, *id*. at 849, that the defendant "shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics." Does this mean that if he happens to be standing next to a six-year-old girl at a soda fountain he has to warn her that he has been convicted of receipt of child pornography? Does he have to explain to her what child pornography *is*?

The vagueness of so many of the conditions of supervised release imposed in this case is important because the more vague a condition is, the harder it is for the defendant to determine what restrictions it actually imposes and whether any of them are so onerous that he should object.

There is more to criticize but we have said enough to indicate that the conditions of supervised release imposed in this case should have received more careful scrutiny by defense counsel and the district judge—unless there was indeed a knowing waiver by the defendant. We cannot tell, because the judge did not confirm with the defendant that he had knowingly waived objections to the conditions, and because the record does not reveal how long the defendant and his lawyer huddled in the courtroom before the defendant agreed to sign the waiver. Probably the huddle was brief, since as we noted earlier the judge said that she was giving them "just … a moment" to decide whether there would be a waiver.

But out of an abundance of caution we have decided to remand the case for a determination of the length of the huddle and, relatedly, whether the defendant knowingly waived all objections to the conditions of supervised release. It might seem that we should go further, and remand the case for revision of the conditions of supervised release and for a full resentencing. There is potential substitutability between prison and the conditions. Both types of punishment restrict the defendant's freedom. And therefore other things being equal (which often they are not, however), the more restrictive the conditions the less the need for a very long prison sentence, while the longer the prison sentence the less the need for very strict conditions. E.g., *United States v. Downs*, 784 F.3d 1180, 1182 (7th Cir. 2015). But a remand of such scope would be premature, given the possibility just discussed that the defendant made a knowing waiver of objections to the conditions of supervised release. Should the limited remand we are ordering reveal that the defendant did not make a knowing waiver of all challenges to the conditions of supervised release recommended in the presentence report and imposed by the judge, the defendant, with advice of counsel, will still need to decide whether correcting the unsound or questionable conditions that we've identified would carry too great a risk that the corrections would lead the district judge to increase the length of the defendant's prison sentence. Of course the judge might decide instead to reduce it, but this just means that there is both upside and downside risk, and a defendant is entitled to an opportunity to decide whether to take a chance that the upside risk will not materialize. *United States v. Bryant*, 754 F.3d 443, 447 (7th Cir. 2014).

So, to conclude, if the limited remand that we're ordering results in a determination that the defendant knowingly waived all challenges to the conditions of supervised release, we will grant the *Anders* motion and that will be the end of the case. If instead the determination is that he did not knowingly waive all challenges to the conditions, the case will again come before us and he will need to decide (and through his counsel advise us of the decision) whether or not to challenge the conditions, since a successful challenge, followed by a remand for resentencing, will leave the judge free to impose a longer, as well as in the alternative a shorter, prison sentence. For now, however, we need only remand the case for a determination of whether the defendant knowingly waived all objections to the conditions of supervised release imposed by the district court. The defendant's lawyer shall continue to represent the defendant on remand, and is ordered to file a status report with this court within 14 days of the district court's ruling on remand.

CASE REMANDED WITH DIRECTIONS