**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANTHONY EVANS,
*Defendant-Appellant.*

Nos. 16-10310
16-10311

D.C. Nos.
4:08-cr-00011-JSW
4:16-cr-00012-JSW

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted December 5, 2017
San Francisco, California

Filed February 28, 2018

Before: MILAN D. SMITH, JR., and SANDRA S.
IKUTA, Circuit Judges, and JOHN D. BATES,[*] District
Judge.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Ikuta

---

[*] The Honorable John D. Bates, Senior District Judge for the United
States District Court for the District of Columbia, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed a sentence for violating conditions of supervised release, vacated a sentence for being a felon in possession of a firearm, and remanded for the district court to correct conditions of supervised release.

The panel held that the district court did not err in applying an enhancement under USSG § 2A2.2(a) and (b)(2)(A) for use of a firearm in the commission of an aggravated assault.

The panel rejected most of the defendant's challenges to supervised release Special Condition 5, which imposed several gang-related constraints, but the panel remanded for the district court to strike the final sentence, which explicitly removes the requirement that the government prove *mens rea* in a future revocation proceeding.

The panel agreed with the defendant that three of his standard conditions of supervised release – which the Sentencing Commission has since amended to address their vagueness – are unconstitutionally vague. The panel remanded for the district court to remove the phrase "meet other family responsibilities" from Standard Condition 4. The panel remanded for the district court to remove an ambiguity in Standard Condition 5, which requires the defendant to work "regularly" at a lawful occupation. The panel remanded for the district court to modify Standard

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Condition 13 – which requires the defendant, as directed by the probation officer, to notify third parties of risks that may be occasioned by his criminal record or personal history or characteristics – in order to provide some determinate guidance to the defendant's probation officer, as well as to the defendant.

The panel did not need to decide whether it should read into Fed. R. Crim. P. 32.1 a requirement that a district court in a revocation proceeding resolve factual disputes or determine explicitly that such resolution is unnecessary. The panel held that any error by the district court in failing to resolve a disputed factual allegation made by the probation officer in the revocation proceeding was harmless.

Dissenting as to Part II.B of the opinion, Judge Ikuta wrote that rather than follow the Supreme Court's guidance that a statute is not unconstitutionally vague merely because it lacks mathematical certainty, the majority erroneously invalidates three standard conditions of supervised release that have been applied for three decades without giving rise to any confusion.

**COUNSEL**

Shilpi Agarwal (argued) and Carmen Smarandoiu, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Susan B. Gray (argued), Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Division; Brian J. Stretch, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Anthony Evans appeals from the sentence imposed because of his conviction for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He also appeals the sentence imposed for violating the conditions of his supervised release in another case. Evans argues that the district court erred in applying a sentencing enhancement under the aggravated assault sentencing guideline, in imposing certain conditions of supervised release, and in failing to resolve Evans's factual objection to an allegation that he had violated his conditions of supervised release on another occasion. We vacate and remand in part, and affirm in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Surveillance camera footage shows that Evans was sitting in the passenger seat of a double-parked car on July 15, 2015, in the Bayview district of San Francisco when a man in a black sweatshirt approached and spoke to him.

Evans's girlfriend, Jamellah Ali-Suluki, left the driver's seat of the car and walked out of the camera frame. The man in the black sweatshirt walked away and conferred with another man, who bent through the front passenger door of a neighboring blue car, and then began shooting at Evans. After firing a number of shots, five of which struck Evans, the man appeared to pass something to the man in the black sweatshirt, and then fled. The man in the black sweatshirt closed the front passenger door of the blue car and looked toward Evans. When Evans got out of the passenger seat of his car, the man in the black sweatshirt fled down the sidewalk. Evans fired several shots at him. Ali-Suluki then returned to the car and drove Evans to the hospital.

In July of 2015, Evans was on supervised release for an earlier felony conviction. After the shooting, the Probation Office claimed that Evans had violated the terms of his supervised release by possessing a firearm, in violation of 18 U.S.C. § 922(g)(1). Separately, Evans was also charged with being a felon in possession of a firearm and ammunition in violation of the same statute. Evans pled guilty to the charge and admitted the corresponding supervised release violation. The Probation Office also alleged that Evans committed aggravated assault when he fired his weapon on July 15, and that he had previously violated the conditions of his supervised release by keeping a gun at his residence in April 2015. Evans denied both of these allegations.

At sentencing, the district court did not address the April 2015 allegation. Because of Evans's criminal history and the seriousness of possessing a firearm, the court sentenced Evans to the maximum two-year sentence for the supervised release violation, to be served consecutively to the court's sentence on the substantive charge. The district court heard argument on the felon-in-possession charge about whether

Evans acted in self-defense when he fired shots at the man in the black sweatshirt. The court stated that it was faced with

> an interesting legal paradigm here because normally in a situation like this . . . I believe under state law, [the defendant] has the burden of proof of the affirmative defense.
>
> But we're not at a situation where — that situation. We're at a situation where this court has to stand here or sit here as an adjudicatory body to determine all in, is this a — an aggravated assault or one that is legally excused by virtue of a self-defense — a self-defense defense being made out by the facts in the case.

The court found that "the defendant did not initiate the shooting," but he did get out of the car and fire at "one of [his assailant's] coconspirators," who was fleeing. Therefore, the court found that Evans had not acted in self-defense and sentenced him to 57 months of imprisonment followed by three years of supervised release subject to both standard and special conditions. Evans's attorney sought permission to address the supervised release conditions, but the court denied him permission to do so.

Evans timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## ANALYSIS

### I.  Aggravated Assault Sentencing Enhancement

In general, Sentencing Guideline § 2K2.1(a)(6) prescribes an offense level of 14 for the possession of a firearm by a prohibited person.  However, pursuant to §§ 2K2.1(c)(1)(A) and 2X1.1, if a defendant charged with unlawful possession of a firearm used the firearm in the commission of another offense, the guideline for that other offense applies if the resulting offense level is higher.  When the other offense is an aggravated assault in which a firearm is discharged, the offense level under § 2A2.2(a) and (b)(2)(A) is 19.

The district court found that Evans used a firearm in the commission of an aggravated assault, and accordingly applied § 2A2.2(a) and (b)(2)(A).  Evans argues here, as he did below, that the district court's finding was erroneous because he acted in self-defense.  The underlying offense of assault is codified in California Penal Code § 240. California law provides that self-defense "negates culpability for assaultive crimes."  *People v. Adrian*, 185 Cal. Rptr. 506, 510 (Cal. Ct. App. 1982).[1]  We review the district court's factual findings for clear error.  *United States v. Christensen*, 828 F.3d 763, 815 (9th Cir. 2015).

At the time Evans exited the car with his gun drawn, he had already been shot five times, and the surveillance video suggests the man he fired at was in league with the shooter. Nevertheless, when Evans began firing the man was already

---

[1]  Under California law, there is no duty to retreat, and even a convicted felon may "defend himself, stand his ground, and use the amount of force reasonable under the circumstances."  *People v. Rhodes*, 29 Cal. Rptr. 3d 226, 232 (Cal. Ct. App. 2005).

fleeing, and Evans continued firing at him as the man ran down the street. Based on its review of the security footage, the district court concluded that Evans did not reasonably believe it was necessary to shoot a fleeing man in order to defend himself, and we conclude that finding was not clearly erroneous.

Evans also asserts that the district court's finding was improper because it misapplied the burden of proof. It is not easy to discern where the court placed the burden of proof, but it did misstate California law when it noted that "under state law, [the defendant] has the burden of proof of the affirmative defense." In fact, California law places the burden on the state to disprove self-defense beyond a reasonable doubt at a criminal trial. *See Adrian*, 185 Cal. Rptr. at 510. Evans does not argue that the "beyond a reasonable doubt" standard applied here. Instead, he recognizes that the government's burden was to disprove self-defense by a preponderance of the evidence, as is generally required when a party seeks to adjust the offense level at sentencing. *See United States v. Charlesworth*, 217 F.3d 1155, 1158 (9th Cir. 2000).

Although its remarks were somewhat ambiguous, the court may have based its conclusion on an objective view of the record without allocating burdens to either side.[2] Even

---

[2] There are contexts in which a district court makes a determination without regard to burdens of proof, such as in a habeas proceeding when deciding whether a trial error was harmless. *See O'Neal v. McAninch*, 513 U.S. 432, 436–37 (1995) ("[W]e think it conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to put the same question in terms of proof burdens (*e.g.*, 'Do I believe the party has borne its burden of showing . . . ?')."). However, sentencing is not such a context.

assuming, *arguendo*, that the district court failed to place the burden of proof on the government to disprove self-defense, however, the error was harmless.  The surveillance video clearly showed that Evans opened fire on a fleeing man.  Under the circumstances, any failure by the district court to properly assign the burden of proof did not affect its finding that Evans did not act in self-defense.

## II. Conditions of Supervised Release

After serving his consecutive prison sentences for the violation of supervised release and the felon-in-possession charge, Evans will be placed on supervised release for three years, subject to numerous conditions.  Evans challenges four of those conditions on various grounds.  We generally review conditions of supervised release for abuse of discretion, but we review de novo claims that such conditions violate the Constitution. *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009).[3]  Evans argues that all of the challenged conditions are unconstitutionally vague.  A condition of supervised release violates due process "if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United*

---

[3] The government argues that we should review Evans's challenges to the conditions of supervised release for plain error because they were not raised below.  However, Evans's counsel sought to address the conditions after the court announced them, and was denied permission to do so.  "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b); *see also United States v. Mancinas-Flores*, 588 F.3d 677, 686 (9th Cir. 2009) ("[A]n objection is required only if the court affords a party the opportunity to make one.").

*States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (quoting *United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001)).

## A.  Special Condition 5

Evans first argues that Special Condition 5, which imposed several gang-related constraints, was procedurally erroneous, substantively unreasonable, and unconstitutionally vague and overbroad.  Special Condition 5 reads as follows:

> The defendant shall not associate with any member of the Down Below Gang.  The defendant shall have no connection whatsoever with the Down Below Gang or any other gang.  If he is found to be in the company of such individuals or wearing the clothing, colors or insignia of the Down Below Gang, or any other gang, the court will presume that the association was for the purpose of participating in gang activities.

"On appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence."  *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).  Evans asserts that the court's failure to adequately explain the choice of conditions is procedural error.  *See United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012) ("[T]he district court must provide a sufficient explanation to 'permit meaningful appellate review' and communicate 'that a reasoned decision has been made.'" (quoting *Carty*, 520 F.3d at 992–93)).

The court did not explain its reasoning for this condition, which was procedural error unless "the reasoning is apparent

from the record." *Id.* (emphasis omitted) (quoting *United States v. Collins*, 684 F.3d 873, 890 (9th Cir. 2012)).  The Presentence Investigation Report stated that Evans "has been identified as an affiliate of the Down Below Gang, which operates out of the Sunnydale Housing Projects."  The probation officer's sentencing recommendation notes that "[o]n his prior term of supervised release, the defendant was prohibited from associating with any member of the Down Below Gang and was prohibited from being in the vicinity of the Sunnydale District in San Francisco."  At sentencing, Evans's counsel explained that Evans grew up in Sunnydale, where "the two main gangs" are the "Up the Hill Gang and Down the Hill Gang" (presumably the same as the Down Below Gang), and that Evans had friends in both gangs.  On this record, the district court's reasoning was apparent: it believed that Evans was connected to the Down Below Gang, and that requiring him to avoid that and other gangs would reduce his risk of reoffending.

Because Special Condition 5 is not procedurally erroneous, we next consider whether it is substantively unreasonable.  "A supervised release condition is substantively unreasonable if it 'is not reasonably related to the goal[s] of deterrence, protection of the public, or rehabilitation of the offender,' or if it infringes more on the offender's liberty than is 'reasonably necessary' to accomplish these statutory goals."  *Wolf Child*, 699 F.3d at 1090 (alteration in original) (first quoting *Collins*, 684 F.3d at 892; and then quoting 18 U.S.C. § 3583(d)(2)).  The government bears the burden of showing "that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release."  *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006).

The district court did not abuse its discretion in imposing the gang condition.  Evans denies being a gang member and argues that none of his offenses were gang-related.  However, he has been linked to the Down Below Gang and its members, and he was previously arrested for violating the conditions of his supervised release that prohibited him from entering the Sunnydale District (where the Down Below Gang operates) and associating with persons convicted of felonies.  A condition barring contact with an organization may be substantively reasonable even if the defendant denies membership, *see United States v. Ross*, 476 F.3d 719, 721–22 (9th Cir. 2007), and it need not relate to the defendant's current or prior offenses as long as it serves the statutory goals of sentencing, *see Watson*, 582 F.3d at 983.  The district court "could properly have concluded that [Evans] was more likely to relapse into crime if he returned to his prior associations.  Probation conditions may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal."  *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991).

Because Special Condition 5 is neither procedurally erroneous nor substantively unreasonable as a whole, we next address Evans's challenges to subsections of the condition.  Evans challenges the requirement that he have "no connection whatsoever with the Down Below Gang or any other gang" as unconstitutionally vague and overbroad because it appears to prohibit incidental or unknowing contacts with gang members or even people who are connected to gang members.  *See United States v. Soltero*, 510 F.3d 858, 865–66 (9th Cir. 2007) (per curiam).  However, we construe this condition "consistent with well-established jurisprudence under which we presume prohibited criminal acts require an element of *mens rea*."

*United States v. Vega*, 545 F.3d 743, 750 (9th Cir. 2008) (construing similar gang condition to require *mens rea*); *see also Soltero*, 510 F.3d at 866–67 (construing similar gang condition to exclude incidental contacts). Thus construed, the condition does not reach unknowing or incidental contacts, and it is not vague or overbroad.

While this reading of the condition saves it from unconstitutionality, it renders the condition's last sentence problematic. That sentence reads: "If [Evans] is found to be in the company of [gang members] or wearing the clothing, colors or insignia of the Down Below Gang, or any other gang, the court will presume that the association was for the purpose of participating in gang activities." This presumption explicitly removes the requirement that the government prove *mens rea* in a future revocation proceeding and therefore, if allowed to stand, would render the condition vague and overbroad. *See Wolf Child*, 699 F.3d at 1100 n.9. Accordingly, although we uphold the rest of Special Condition 5, we remand for the district court to strike this final sentence. *See Soltero*, 510 F.3d at 867.

## B. Standard Conditions

Evans next challenges three "standard" conditions of supervised release, arguing that each of them is unconstitutionally vague.[4] In response to criticism from the Seventh Circuit, among other critics, the Sentencing

---

[4] In the language of the Sentencing Guidelines, "standard" conditions should be distinguished from "mandatory" conditions. The latter must be imposed on any defendant placed on supervised release, while the former are merely recommended to the extent that they serve the purposes of sentencing. U.S. Sentencing Guidelines Manual § 5D1.3(a), (c).

Commission has amended the Sentencing Guidelines to address these three conditions' vagueness. *See* U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines 43–44 (Apr. 28, 2016), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160428_RF.pdf.[5] However, Evans's sentence still includes the standard conditions in effect on the date of his sentencing. *See* U.S. Sentencing Guidelines Manual § 1B1.11(a). We agree with Evans that the three challenged standard conditions are unconstitutionally vague.

Standard Condition 4 requires Evans to "support his or her dependents and meet other family responsibilities." Evans challenges the phrase "meet other family responsibilities," contending that its meaning is too vague to alert him to his responsibilities. *See United States v. Kappes*, 782 F.3d 828, 849 (7th Cir. 2015) ("[I]t is not apparent what 'other family responsibilities' means, given that it appears to mean something different than 'support[ing]' [appellant's] as-yet nonexistent dependents." (second alteration in original)). The government disagrees, but it has offered no suggestion as to what "other family responsibilities" might

---

[5] The dissent contends that "until recently, no one doubted that Standard Conditions 4, 5, and 13 provided people of ordinary intelligence with fair notice of what was prohibited." Dissenting Op. at 29. But as we discuss below, the entities that "recently" became concerned with the vagueness of these conditions were several successive panels of the Seventh Circuit, and the only courts of appeals to address the issue before then—the Tenth and the Eleventh Circuits—did so in a cursory and unpersuasive fashion. Likewise, in amending these standard conditions, the Sentencing Commission has adopted the Seventh Circuit's view.

mean.[6]  Does it mean that Evans must wash the dishes after dinner?  Does it mean he must attend his children's soccer games?  If a relative comes to Evans with a problem, does the condition require him to do his best to give good advice rather than ignoring him or her?[7]   The Sentencing Commission's amendment resolves the problem by omitting the phrase.  *See* U.S. Sentencing Guidelines Manual § 5D1.3(d)(1).  We remand for the district court to do the same.

Standard Condition 5 requires Evans to "work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons." Evans challenges the word "regularly," arguing that it has no

---

[6] The government relies on a Tenth Circuit case, *United States v. Munoz*, in which that court rejected a vagueness challenge to the words "support" and "dependents" in an identically worded condition. 812 F.3d 809, 818–19 (10th Cir. 2016).  But *Munoz* did not address the phrase that Evans challenges here: "other family responsibilities."  It therefore provides no support for the government's position.

[7] The dissent criticizes our reliance on "hypotheticals and rhetorical questions," *see* Dissenting Op. at 30, concluding that "no one would have trouble understanding and applying" conditions like Standard Condition 4 in the real world, *id.* at 25 (citations and internal quotation marks omitted).  But for all its talk of commonsense application, the dissent's proffered explanations of the conditions do not answer any of the questions posed.  For example, the dissent reads Special Condition 4 to require Evans to "provide support to his four children" (which, as the Seventh Circuit noted in *Kappes*, 782 F.3d at 849, cannot be what it means to "meet other family responsibilities" because the condition already independently requires Evans to "support his . . . dependents") and to "discharge family responsibilities of analogous significance." Dissenting Op. at 25.  But this reading amounts to little more than a rephrasing of the condition and hence does little to clarify the condition's commonsense meaning.

clear definition and renders the condition unconstitutionally vague. *See United States v. Poulin*, 809 F.3d 924, 932 (7th Cir. 2016); *Kappes*, 782 F.3d at 849. Indeed, the word "regularly" has no clear meaning in this context: it could mean something like "full-time" or "close to full-time"—the fact that the amended condition requires thirty hours per week, *see* U.S. Sentencing Guidelines Manual § 5D1.3(c)(7), seems to support this reading—or it could mean "the same amount each week" or "the same amount each month." This ambiguity might confront Evans if he had, for example, a job opportunity that would offer only ten hours per week; would taking that job be enough to keep him out of jail? This condition places Evans "in the untenable position of discovering the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court." *United States v. Stoterau*, 524 F.3d 988, 1003 (9th Cir. 2008) (quoting *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002)).**[8]** We remand for the district court to modify Standard Condition 5 to remove this ambiguity.

Standard Condition 13 requires Evans, "[a]s directed by the probation officer," to "notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics . . . ." Evans argues that, as the Seventh Circuit has held, "[t]here is no indication of what is meant by 'personal history' and 'characteristics' or what

---

**[8]** Again, the government relies on a Tenth Circuit case, *United States v. Llantada*, which upheld a similar condition against a vagueness challenge. 815 F.3d 679, 681–82 (10th Cir. 2016). But *Llantada* simply cited *Munoz* and concluded that under the "common sense, non-technical" approach endorsed in that case, "[n]either a parolee nor his parole officer would have trouble understanding and applying" the condition. *Id.* at 682. We do not find this conclusory reasoning persuasive.

'risks' must be disclosed to which 'third parties.'" *United States v. Thompson*, 777 F.3d 368, 379 (7th Cir. 2015); *see also United States v. Hill*, 818 F.3d 342, 345 (7th Cir. 2016) ("Hopelessly vague is the further condition . . . that the defendant 'shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics.' Does this mean that if he happens to be standing next to a six-year-old girl at a soda fountain he has to warn her that he has been convicted of receipt of child pornography? Does he have to explain to her what child pornography *is*?").**[9]** Evans has several convictions for being a felon in possession of a firearm; must he disclose that there is a risk he may have a gun? To whom must he make this disclosure? Only to social acquaintances, or also to coworkers? If he goes to a bank in order to open a savings account and meets with a bank employee, must he disclose that he might have a gun? He has no way of knowing.

The government argues that this condition does not leave Evans guessing because it "requires consultation with the probation officer." But "[a] vague supervised release condition 'cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, *i.e.*, the delegation of "basic policy matters to policemen for resolution on an ad hoc and

---

**[9]** The government cites *United States v. Nash*, in which the Eleventh Circuit upheld this condition. 438 F.3d 1302, 1306–07 (11th Cir. 2006). However, the Eleventh Circuit, apparently in accordance with its case law, merged the vagueness and substantive reasonableness inquiries into one hybrid determination that the condition was "undeniably related" to the appellant's offenses. *Id.* at 1307 (quoting *United States v. Taylor*, 338 F.3d 1280, 1285 (11th Cir. 2003)). Our case law keeps these inquiries separate, *see, e.g.*, *Wolf Child*, 699 F.3d at 1090–91, and so the relevance of *Nash* to this vagueness challenge is limited.

subjective basis."'""  *Soltero*, 510 F.3d at 867 n.10 (alteration omitted) (quoting *Loy*, 237 F.3d at 266).  The language of the condition must provide some determinate guidance to Evans's probation officer, as well as to Evans.

"A probationer must be put on clear notice of what conduct will (and will not) constitute a supervised release violation."  *Id*.   Indeed, the Sentencing Commission recognized as much when it amended the applicable guideline to remove the ambiguous phrase "personal history or characteristics" and to clarify that a probation officer may only require a defendant to notify specific persons of specific risks that the defendant poses to those persons.  *See* U.S. Sentencing Guidelines Manual § 5D1.3(c)(12) ("If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction.").  Accordingly, we remand for the district court to modify Standard Condition 13 in accordance with this opinion.

## III.    Factual Dispute During Revocation Hearing

Evans's final claim of error is that the district court was required to resolve a factual issue that was presented at his revocation hearing: namely, whether his probation officer's allegation that Evans possessed a gun in April 2015 was true.  Evans objected to this allegation and presented two sworn declarations contesting it.   Federal Rule of Criminal Procedure 32(i)(3)(B) requires a sentencing court to resolve such factual disputes or determine explicitly that resolving the dispute is unnecessary.  *See United States v. Doe*, 705 F.3d 1134, 1153 (9th Cir. 2013).  In general, Rule 32, not Rule 32, governs revocation proceedings, *see United States v. Urrutia-Contreras*, 782 F.3d 1110, 1112 (9th Cir.

2015), and Rule 32.1 does not include an analogue to Rule 32(i)(3)(B).  However, "where Rule 32.1 is silent with respect to the matters that must be considered by a district court in imposing a sentence for violating the terms of supervised release, Rule 32 may be used to 'fill in the gap' in Rule 32.1." *Id.* at 1113.

Evans argues that we should read into Rule 32.1 an analogous requirement that a district court in a revocation proceeding must resolve factual disputes or determine explicitly that such resolution is unnecessary.  We need not decide this question because any error by the district court in failing to resolve the April 2015 allegation was harmless. The district court did not refer to the allegation in determining Evans's sentence; rather, it placed great weight on both Evans's criminal history and the instant violation, his admitted possession of a firearm in July 2015.  Thus, we are satisfied that any error in failing to resolve the factual allegation had no effect on the court's decision.

## **CONCLUSION**

For the foregoing reasons, we affirm the district court's sentence for the violation of supervised release and vacate and remand the sentence on the substantive offense for the district court to correct the challenged conditions of supervised release.  Each party shall bear its own costs on appeal.  Fed. R. App. P. 39(a)(4).

AFFIRMED in part and VACATED AND REMANDED in part.

IKUTA, Circuit Judge, dissenting:

In the face of myriad theories attacking the very idea that words can convey meaning, the Supreme Court has made it clear that a statute is not unconstitutionally vague merely because it lacks "mathematical certainty." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Rather than follow the Supreme Court's guidance, however, the majority today erroneously invalidates three standard conditions of supervised release that have been applied for three decades without giving rise to any confusion. Therefore, I dissent as to Part II.B.[1]

I

The majority's error stems from its misunderstanding of the Supreme Court's void-for-vagueness doctrine. Recognizing that legal advocates can easily argue that statutory words or phrases are ambiguous or lack discernible meaning, the Supreme Court has carefully limited the doctrine and warned appellate courts that the Constitution "does not require impossible standards," *United States v. Petrillo*, 332 U.S. 1, 7 (1947), or expect "perfect clarity and precise guidance," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008))

The Supreme Court has erected several signposts marking the limits of the void-for-vagueness doctrine. First, the Supreme Court has told us not to impose "impossible standards of specificity." *See Jordan v. De George*, 341 U.S. 223, 231 (1951). "[C]ondemned to the use of words, we can never expect mathematical certainty from our language."

---

[1] I concur as to parts I, II.A, and III of the majority opinion.

*Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *Grayned*, 408 U.S. at 110); *see also Jordan*, 341 U.S. at 232 ("[D]oubt as to the adequacy of a standard in less obvious cases does not render that standard unconstitutional for vagueness."). Language "marked by 'flexibility and reasonable breadth, rather than meticulous specificity'" is not unconstitutionally vague so long as "it is clear what the ordinance as a whole prohibits." *Grayned*, 408 U.S. at 110 (quoting *Esteban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1088 (8th Cir. 1969)). Further, any concern that a statute "fails to provide people of ordinary intelligence" an understanding of what conduct it prohibits is ameliorated when the statute contains a scienter requirement. *Hill*, 530 U.S. at 732. "[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that [the] conduct is proscribed." *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see Holder*, 561 U.S. at 21 ("[T]he knowledge requirement of the statute further reduces any potential for vagueness[.]").

Second, courts should be reluctant to entertain facial vagueness challenges based on hypothetical situations. *See Hoffman Estates*, 455 U.S. at 495 n.7 ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." (alteration in original) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975))). Instead, courts should limit themselves to determining whether a statute is vague as applied to the challenger's particular situation. *See Gonzales v. Carhart*, 550 U.S. 124, 167–68 (2007) (scolding circuit courts for entertaining facial attacks against a state statute, and instructing that "[a]s-applied challenges are the basic building blocks of constitutional adjudication" (alteration in original) (quoting Richard H. Fallon Jr, *As-*

*Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1328 (2000))). In a pre-enforcement challenge, a court considers whether the "statutory terms are clear in their application to plaintiffs' proposed conduct," not how the statute might apply to the conduct of others. *Holder*, 561 U.S. at 21. A facial challenge cannot succeed when "the ordinance is sufficiently clear as applied to" the challenger. *Hoffman Estates*, 455 U.S. at 500.**[2]**

Even when a challenger brings a facial challenge to a statute that is claimed to interfere with the challenger's right of free speech or of association where "a more stringent vagueness test should apply," *id.* at 499, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended application,'" *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). A statutory term is not invalid just because a challenger "can conjure up hypothetical cases" that put the term's meaning in question. *Id.* (quoting *American Commc'ns Assn v. Douds*, 339 U.S. 382, 412 (1950)). "[A]djudication of the reach and

---

**[2]** In considering whether the residual clause in the definition of "violent felony" in the Armed Career Criminal Act was unconstitutionally vague, the Court explained that it was required to use the categorical approach and assess "whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). Only in this context did the Court decline to consider "the risk posed by the particular conduct in which the defendant engaged" rather than "the risk posed by the ordinary case of the defendant's crime." *Id.* at 2562. *Johnson* did not alter the rule disfavoring challenges based on hypotheticals that do not apply to the challenger's proposed conduct.

constitutionality of [the statute] must await a concrete fact situation." *Holder*, 561 U.S. at 25 (second alteration in original) (quoting *Zemel v. Rusk*, 381 U.S. 1, 20 (1965)).

Third, the Supreme Court places great weight on whether a statutory phrase or term has caused prior problems. For instance, in rejecting a vagueness challenge to the phrase "crime involving moral turpitude," *Jordan* held it was "significant that the phrase has been part of the immigration laws for more than sixty years," and had not given rise to problems in interpretation. 341 U.S. at 229. Likewise, the Court upheld a tax evasion statute against a vagueness challenge because "there ha[d] not been any apparent general confusion bespeaking inadequate statutory guidance" for many years, and therefore "[a] finding of unconstitutional uncertainty . . . would be a negation of experience and common sense." *United States v. Ragen*, 314 U.S. 513, 524 (1942). In contrast, the Court invalidated the definition of "violent felony" in the Armed Career Criminal Act's residual clause because the "Court's repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm[ed] its hopeless indeterminacy." *Johnson*, 135 S. Ct. at 2558.

Guided by these signposts, the Supreme Court has rejected numerous vagueness challenges. Thus in *Holder*, the Court overruled the Ninth Circuit, holding that the terms "training," "expert advice or assistance," "service," and "personnel" in a statute criminalizing the provision of material support to terrorists were "clear in their application to plaintiffs' proposed conduct." 561 U.S. at 21; *see also Hill*, 530 U.S. at 732–33 (upholding an ordinance precluding persons from approaching an abortion clinic to engage in "protest, education, or counseling" against a vagueness challenge, because "it is clear what the ordinance as a whole

prohibits" (quoting *Grayned*, 408 U.S. at 110)); *Williams*, 553 U.S. at 289–90, 304–06 (upholding a statute criminalizing the possession and distribution of material "in a manner that reflects the belief or that is intended to cause another to believe" that the material at issue contains child pornography (quoting 18 U.S.C. § 2252(A)(a)(3)(B))); *Jordan*, 341 U.S. at 231 n.15 (collecting cases rejecting vagueness challenges). In doing so, the Court rejected the idea that a term is vague just because, when viewed in isolation, a challenger can imagine the potential for ambiguity. *See Holder*, 561 U.S. at 21; *Hill*, 530 U.S. at 733; *Williams*, 553 U.S. at 304–06.

## II

In light of these principles, the majority's determination that Standard Conditions 4, 5, and 13 are void for vagueness is contrary to the Supreme Court's guidance. In entertaining a disfavored facial vagueness challenge, the majority imposes an "impossible standard of specificity," discounts the ameliorative effect of a mens rea requirement, relies on hypothetical cases and engages in speculation, and ignores the long and untroubled judicial application of these conditions.

These errors are clear in the majority's analysis of Standard Condition 4, which requires Evans to "support his . . . dependents and meet other family responsibilities." Relying on the Seventh Circuit's conclusion, the majority claims this condition is void for vagueness on its face because the phrase "other family responsibilities" lacks meaning. Maj. at 14–15 (citing *United States v. Kappes*, 782 F.3d 828, 849 (7th Cir. 2015)). But Evans fails to explain why this condition is unclear as applied to him. *See Holder*, 561 U.S. at 22–23 (holding that plaintiffs cannot prevail in a vagueness challenge by "pointing to hypothetical

situations designed to test the limits" of certain statutory terms, when their own case presented no such problem). Neither Evans nor his probation officer should have trouble understanding that Standard Condition 4 requires Evans to provide support to his four children and to discharge family responsibilities of analogous significance. The Tenth Circuit likewise concluded that no one "would have trouble understanding and applying" Standard Condition 4 "in a real world setting." *United States v. Llantada*, 815 F.3d 679, 682 (10th Cir. 2016) (upholding the condition). Although the condition might "involve ambiguity in particular circumstances" a defendant "would understand what was required." *United States v. Munoz*, 812 F.3d 809, 818 (10th Cir. 2016). Thus, the majority's confusion about whether "responsibilities" could encompass trivial activities such as washing dishes embodies the sort of hypertechnical game-playing the Supreme Court has rejected. Maj. at 14–15. *See Williams*, 553 U.S. at 305; *Hill*, 530 U.S. at 733. "The likelihood that anyone would not understand" what this condition requires "seems quite remote." *Hill*, 530 U.S. at 732.

Moreover, because Evans knows his own family situation, any vagueness is ameliorated by the mens rea requirement we read into Condition 4. *See Holder*, 561 U.S. at 21; *Hill*, 530 U.S. at 732. We interpret standard conditions of supervised release "consistently with the 'well-established jurisprudence under which we presume prohibited criminal acts require an element of *mens rea*.'" *United States v. Napulou*, 593 F.3d 1041, 1045 (9th Cir. 2010) (quoting *United States v. Vega*, 545 F.3d 743, 750 (9th Cir. 2008)). Further, should an actual (as opposed to hypothetical) question arise regarding the scope of a condition, Evans, like all defendants subject to the supervised release conditions, has "an additional layer of

protection." *United States v. Phillips*, 704 F.3d 754, 768 n.13 (9th Cir. 2012). If Evans is charged with violation of a condition of supervised release, he may raise an as-applied challenge in district court, and the district court "will examine the findings to [e]nsure that [his] due process right to notice of prohibited conduct has been observed and to protect him from unknowing violations." *Id.* (alterations in original) (quoting *United States v. Romero*, 676 F.2d 406, 407 (9th Cir. 1982)); *see also Vega*, 545 F.3d at 750 (same).

The majority's invalidation of the other conditions is erroneous for the same reasons. According to the majority, Standard Condition 5, which requires that he "work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons," is ambiguous because the word "regularly" has no clear definition. Maj. at 15–16. But in context, people of common intelligence would understand that if Evans gets a job, he must maintain a good attendance record on a regular basis. *See Hoffman Estates*, 455 U.S. at 495 n.7 (law is not vague if "it requires a person to conform his conduct to an imprecise but comprehensible normative standard" (quoting *Coates v. City of Cincinnati*, 402 U.S. at 614)). The Tenth Circuit agreed, holding that the phrase "work regularly" was not impermissibly vague because "district courts impose this condition with virtual uniformity." *Munoz*, 812 F.3d at 814; *see also Llatanda*, 815 F.3d at 682.

The majority, by contrast, is puzzled because the word "regularly" does not differentiate between full-time or part-time work, and does not clarify whether it means "the same amount" of work each week or month. Maj. at 16. The Supreme Court has had little patience with speculation about possible vagueness in hypothetical conditions. *See Holder*, 561 U.S. at 22–23 ("Whatever force these arguments might

have in the abstract, they are beside the point here. Plaintiffs . . . cannot seek refuge in imaginary cases that straddle the boundary between [two statutory terms]" and raise only "theoretical doubts" about how the statute applies); *Hoffman Estates*, 455 U.S. at 504 ("Although it is possible that specific future applications . . . may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise." (alterations in original) (quoting *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 52 (1966))). And the Court has rejected the argument that standards "marked by flexibility and reasonable breadth" are unconstitutional. *Grayned*, 408 U.S. at 110 (quoting *Esteban*, 415 F.3d at 1088); *see also Johnson*, 135 S. Ct. at 2561 (holding that laws are not unconstitutionally vague merely because they "call for the application of a qualitative standard such as 'substantial risk' to real-world conduct"). We have likewise upheld supervised release conditions that impose qualitative restrictions. For instance, we upheld a restriction on "'frequent[ing] places' where illegal drugs are used or sold" against a vagueness challenge, concluding that under a "common sense reading," the word "frequenting" meant "often or habitually" and did not include "incidental contact." *Phillips*, 704 F.3d at 768 (quoting Merriam-Webster's Collegiate Dictionary, 11th Edition (2003)). Unlike the majority, *Phillips* did not find it necessary to strike down this condition on the ground that the word "frequenting" failed to specify time constraints with precision. *See id.*

The majority's invalidation of Standard Condition 13 is equally flawed. This condition requires Evans, "[a]s directed by the probation officer," to "notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics." Evans argues

that the condition does not define "personal history," "characteristics," or which "risks" must be disclosed. Again, context eliminates the ambiguity. Evans knows how the condition applies because he has intimate knowledge of his own "criminal history," "criminal record," and "personal history." *See United States v. Nash*, 438 F.3d 1302, 1307 (11th Cir. 2006) (upholding Condition 13 because defendant's "convictions inform[ed] the probation officer as to which parties 'may be occasioned' to be harmed by [defendant]");**[3]** *United States v. MacMillen*, 544 F.3d 71, 76–77 (2d Cir. 2008) (upholding a similar condition that authorized the probation office to discuss "third-party risks with employers" because "the circumstances of the case" meant that "[p]robation will not be operating in a vacuum when it considers whether and in what situations an employer should be informed" of the defendant's offense). Again, only the Seventh Circuit and the majority are confused by the meaning of these common words. Maj. at 16–17 (citing *United States v. Hill*, 818 F.3d 342, 345 (7th Cir. 2016); *United States v. Thompson*, 777 F.3d 368, 379 (7th Cir. 2015)). Further, the condition requires consultation with a probation officer, which further reduces the possibility that Evans might be confused by the condition.**[4]**

---

**[3]** The majority contends that *Nash* is of limited relevance because the Eleventh Circuit's inquiry "merged the vagueness and substantive reasonableness inquiries." Maj. at 17 n.9. Regardless of its precise framework, *Nash* explicitly stated that the defendants' "previous and current convictions" gave the probation officer guidance to enforce the condition. 438 F.3d at 1307.

**[4]** Because the probation officer's determination regarding the scope of this requirement is limited by the particulars of Evans's "criminal history," "criminal record," and "personal history," the condition does not give the probation officer unlimited discretion. *Cf. United States v. Soltero*, 510 F.3d 858, 867 n.10 (9th Cir. 2007) (holding that a "vague

*See United States v. King*, 608 F.3d 1122, 1128–29 (9th Cir. 2010) ("In addition to the bare words of the probation condition, the probationer may be guided by the further definition, explanations, or instructions of the district court and the probation officer." (quoting *Romero*, 676 F.2d at 407)).

In fact, until recently, no one doubted that Standard Conditions 4, 5, and 13 provided people of ordinary intelligence with fair notice of what was prohibited. Courts have applied these conditions since the Sentencing Guidelines were first propounded in 1987. *See* United States Sentencing Guidelines Manual § 5B1.4(a)(4), (5), (13) (U.S. Sentencing Comm'n 1987). There has been no long history of district or appellate court opinions struggling to "craft a principled and objective standard" for construing and applying these conditions. *Johnson*, 135 S. Ct. at 2558. Only after close to 30 years of untroubled application did the Seventh Circuit suddenly detect that Standard Condition 4 and other conditions were unconstitutionally vague on their face. *Kappes*, 782 F.3d at 849.[5] And until today, the

---

supervised release condition 'cannot be cured by allowing the probation officer an unfettered power of interpretation'" (quoting *United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001))). Further, in the event of an alleged supervised release violation, the district court will be able to determine if Evans received sufficient notice of prohibited conduct. *Phillips*, 704 F.3d at 768 n.13.

[5] The majority argues that the fact that the Sentencing Commission subsequently amended the Guidelines to clarify the language supports the majority's conclusion that the original Conditions are vague. Maj. at 13–14, 16, 18. But the Sentencing Commission amended the guidelines only in response to the Seventh Circuit's hypothetical concerns, not to any real-world difficulty. *See* U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines 43–44 (Apr. 28, 2016), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-

Seventh Circuit's superficial facial analysis, floating free from the Supreme Court's careful framework for determining when a statute is unconstitutionally vague, has been repudiated by all other circuits. *See Llatanda*, 815 F.3d at 682; *Munoz*, 812 F.3d at 814; *MacMillen*, 544 F.3d at 76–77; *Nash*, 438 F.3d at 1307. We should have done the same, and avoided falling into the Seventh Circuit's error.

## III

Because "[i]n most English words and phrases there lurk uncertainties," it is always easy to argue that words are incapable of expressing fixed and determinate concepts. *Robinson v. United States*, 324 U.S. 282, 286 (1945). In fact, such arguments have infected law schools for decades. *See* Gary Peller, *The Metaphysics of American Law*, 73 Cal. L. Rev. 1151, 1162, 1168–69 (1985); Richard H. Fallon Jr, *The Meaning of Legal "Meaning" and Its Implications for Theories of Legal Interpretation*, 82 U. Chi. L. Rev. 1235, 1254 (2015). That is why the Supreme Court has rejected any void-for-vagueness test that requires language to have "mathematical certainty," *Hill*, 530 U.S. at 733 (quoting *Grayned*, 408 U.S. at 110), or "perfect clarity," *Holder*, 561 U.S. at 19 (quoting *Williams*, 553 U.S. at 304). But the majority here has fallen into the specificity trap. By relying on hypotheticals and rhetorical questions, it strikes down ordinary language that can be clarified through case-by-case application of the constitutional vagueness doctrine.

I therefore dissent, and would affirm the district court in full.

---

friendly-amendments/20160428_RF.pdf. The Sentencing Commission itself made no finding that the conditions were vague.